**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

IN THE UNITED STATES DISTRICT COURT    DEC 1 5 2023
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION    TAMMY H. DOWNS, CLERK
By _____
DEP CLERK

T.R.                                                    **PLAINTIFF**

v.                      NO. 4:23-CV-1194-LPR

**VILONIA SCHOOL DISTRICT**                            **DEFENDANT**

## COMPLAINT

Plaintiff, T.R., for her Complaint state: This case assigned to District Judge Rudofsky
and to Magistrate Judge Kearney

### Summary of Claims

1.     T.R. ("Parent") is the parent of D.D.

2.     Parent is the prevailing party in proceedings under the Individuals
with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq.*, on behalf of
D.D., and against the Vilonia School District ("District").

3.     Parent seeks to recover attorneys' fees and costs from the District
pursuant to 20 U.S.C. §1415(i)(3).

### Venue and Jurisdiction

4.     Parent resides in Faulkner County, Arkansas.

5.     The District's principal place of business is located in Faulkner
County, Arkansas. *See* 20 U.S.C. §1391(b)(1), (c)(2).

6.     A substantial part of the events or omissions giving rise to these
claims occurred in Faulkner County, Arkansas. *See* 20 U.S.C. §1391(b)(2).

7.     Faulkner County is in the Eastern District of Arkansas, Central Division. *See* 28 U.S.C. §83(a)(1).

8.     This Court has jurisdiction of Parent's IDEA attorneys' fees claim against the District pursuant to 20 U.S.C. §1415(i)(3).

## Statement of Facts

9.     D.D., age 16, is a child with a disability as defined by the IDEA. *See* 20 U.S.C. §1401(3).

10.     On August 12, 2022, Parent filed a due process complaint with ADE alleging the District denied D.D. a free appropriate public education ("FAPE") as required by the IDEA.

11.     ADE identified the case as H-23-08 and assigned the case to an impartial due process hearing officer ("HO")

12.     The HO heard the testimony of 10 witnesses over six days.

13.     On June 25, 2023, the HO issued her Final Decision and Order finding in favor of Parent and materially altering the legal relationship of the parties by requiring the District to conduct a comprehensive evaluation and to use the evaluation results to develop an appropriate Individualized Education Program ("IEP") for D.D.

14.     The HO's Final Decision and Order in H-23-08 (redacted) is attached hereto as **Exhibit A** and incorporated by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

15.     On July 13, 2023, Parent filed a second due process complaint with ADE alleging the District denied D.D. a FAPE as required by the IDEA.

16.     ADE identified the case as H-24-01 and assigned the case to an HO.

17.     The HO heard the testimony of four witnesses over two days.

18.     On October 5, 2023, the HO issued her Final Decision and Order finding in favor of Parent and materially altering the legal relationship of the parties by requiring the District to pay for D.D. to attend a private school.

19.     The HO's Final Decision and Order in H-24-01 (redacted) is attached hereto as **Exhibit B** and incorporated by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

## Count I – IDEA Attorneys' Fees and Costs

20.     Parent is the prevailing party in an action or proceeding under the IDEA and may be awarded reasonable attorneys' fees and costs from the District. *See* 20 U.S.C. §1415(i)(3)(B)(i).

21.     The HO's decision awarded Parent actual relief on the merits of their claim that materially altered the legal relationship between the parties by

3

modifying the District's behavior in a way that directly benefited D.D. *See Birmingham v. Omaha Sch. Dist.*, 298 F.3d 731, 734 (8th Cir. 2002).

22.    The District had 90 days to appeal the HO's decision. *See* 20 U.S.C. §1415(i)(2)(B) (90 days to appeal). The District's time to appeal the decision in H-23-08 has run. The District's time to appeal the decision in H-24-01 will run on January 3, 2024.

23.    The IDEA does not establish a limitations period for an IDEA fee claim. *See* 20 U.S.C. §1415(i)(3). The Eighth Circuit has established a 90-day limitations period that starts when the losing party's time to appeal runs out, or 180 days from the HO's decision. *See Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 875-76 (8th Cir. 2020), cert. denied, 141 S. Ct. 2851 (2021); 20 U.S.C. §1415(i)(2)(B) (90 days to appeal).

24.    December 22, 2023, is 180 days from the HO's decision in H-23-08. April 2, 2024, is 180 days form the HO's decision in H-24-01. Accordingly, Parent's IDEA fee claims are timely.

25.    If the District does *not* appeal the HO's decision in H-24-01, Parent's IDEA attorneys' fees and costs claim will be ripe, and Parent will move for IDEA attorneys' fees and costs.

4

26.    If the District does appeal the HO's decision in H-24-01, Parent will move for IDEA attorneys' fees and costs within 14 days of this Court's decision affirming the HO's decision in H-24-01. *See* Local Rule 54.1.

WHEREFORE, Parent prays that the District be ordered to pay Parent her IDEA attorneys' fees and costs as the prevailing party in proceedings under the IDEA; and, that Parent be awarded all other just and proper relief to which they may be entitled under the law and the facts.

Respectfully submitted,

Theresa L. Caldwell
Arkansas Bar Number 91163
Attorney for Plaintiffs
**CALDWELL LAW OFFICE**
14 Alban Lane
Little Rock, Arkansas 72223
Tel.: 501-414-0434
E-mail: tlcatty@gmail.com

5

## Arkansas Department of Education

## Special Education Unit

███████████████

**Parent of** ████████████████                                       **PETITIONER**

**VS.**                         **Case No. H-23-08**

**VILONIA SCHOOL
DISTRICT**                                                      **RESPONDENT**

## HEARING OFFICERS FINAL DECISION AND ORDER

1

**ISSUES PRESENTED:**

Whether the Vilonia School District (hereinafter "District" or "Respondent") denied ███████████ (hereinafter "Student") a free, appropriate, public education (hereinafter "FAPE"), between August 12, 2020 through August 12, 2022,  in violation of certain procedural and substantive requirements of the Individuals with Disabilities Education Act of 2004, 20 U.S.C. 1400-1485, as amended (hereinafter referred to as "IDEA"), by:  (1) failing to provide Student a free appropriate public education during the 2020-2021, 2021-2022, and 2022-2023 school years.  Additionally, Parent seeks private placement at Compass Academy.

**Procedural History:**

On August 12, 2022, the Arkansas Department of Education (hereinafter referred to as the "Department" or "ADE") received a request to initiate a due process hearing from ███████ ███████ ("Parent" or "Petitioner", as the Parent of ███████████ (hereinafter referred to as "Student"), against the Vilonia School District (hereinafter referred to as "District" or "Respondent").  Parent requested the hearing because she believed the District failed to comply with the Individuals with Disabilities Education Act of 2004, 20 U.S.C. 1400-1485, as amended (hereinafter referred to as "IDEA") and the regulations set forth by the Department by not providing Student with appropriate special education services, as noted supra in the statement of issues. [1]

In response to the Parent's request for a Due Process hearing, the Department assigned the case to this impartial hearing officer.  Thereafter, a prehearing conference was scheduled for September 19, 2022, at 10:00a.m., and the Due Process hearing was scheduled for September 21-23, 2022.

---

[1] See hearing officer File-Petitioner Complaint.

Exhibit A to Complaint

On September 18, 2022, Parent filed a motion for continuance, stating that counsel had a conflict with another hearing and that the parties had reached a tentative agreement and are in the process of placing their settlement agreement in writing for approval.[2] She further stated that the settlement agreement should be completed and counsel for parent should be able to request dismissal of this case within the next two weeks without having to reschedule it. On September 20, 2022, this hearing officer granted Petitioner's motion for a continuance and stated that counsel had until October 14, 2022, to file for dismissal or the due process hearing would be reset.[3] On October 17, 2022, this hearing officer sent an email to the parties asking for the status of the case. Counsel for parent responded that the parties were still working on settlement and that they had a couple of terms yet to be resolved but anticipated these loose ends would be wrapped up by Friday October 21, 2022.[4] Because the case appeared to be close to settlement, this hearing officer gave the parties until November 1, 2022, to finalize their settlement agreement. On December 6, 2022, this Hearing Officer sought a status update from the parties. Again, counsel for the Parent, sent an email and it stated that she was drafting the settlement agreement and hoped to have it approved that week so she could dismiss.[5] On December 20, 2022, and December 27, 2022, this Hearing Officer again inquired with the parties as to the status of this case. Counsel for the District responded that he understood the case had been resolved. Counsel for the Parent stated that they did not have a signed settlement agreement but that they were working on the settlement agreement and awaiting some figures from the private school and just needed a little more time. On February 27, 2023, counsel for parent sent an email to all hearing officers with cases she needed to schedule and her availability. Surprisingly

---

[2] See Due Process Hearing file Motion for continuance
[3] See Due Process Hearing file Order granting motion for continuance
[4] Id., emails
[5] Id., emails

Exhibit A to Complaint

on that list was this due process request.  This hearing officer immediately granted the motion for

continuance and set the due process hearing for April 26-28, 2023.  On April 23, 2023, counsel

for Parent sent an email stating that she needed a continuance because she had spent all afternoon

in the emergency room and was diagnosed with diverticulitis and was unable to get out of bed or

concentrate.  With all parties in agreement this hearing was rescheduled for May 3-5, 2023.[6]

The Prehearing conference was conducted via zoom on May 2, 2023.[7]  Counsel for both

the Parent and the District participated in the prehearing conference.  During the prehearing

conference, the parties discussed unresolved issues to be addressed at the hearing, as well as the

witnesses and evidence which would be necessary to address the same.[8]

Thereafter the due process hearing in this matter began as scheduled On May 3, 2023.

Testimony was heard in this case on May 3, 4, 5, 10, 11, 16, 2023.  Present for the Due Process

Hearing were Theresa Caldwell, attorney for Petitioner, Jay Bequette, attorney for the District,

███████████, Parent, Audra Alumbaugh, Advocate, Jennifer Jensen, Special Education

Director, and Rhonda Standridge, Administrative Assistant.

The following witnesses testified in this matter:  Jennifere Jensen, Ronnie Simmons,

Jeannie Noel, Courtney Williams, Keith Renuard, Amy White, Holly McCord, Doug Adams,

Jennifer Jensen, and ███████████[9]

Having been given jurisdiction and authority to conduct the hearing pursuant to Public

Law 108-446, as amended and Arkansas Code Annotated §6-41-202 through §6-41-223, Dana

McClain, J.D., Hearing Officer for the Arkansas Department of Education, conducted a closed

impartial hearing.

---

[6] Due Process Hearing case file
[7] Transcript, prehearing conference.
[8] Id.
[9] Transcripts, Vol. I-IX.

4

Both parties were offered the opportunity to provide post-hearing briefs in lieu of closing statements, and both timely submitted briefs in accordance with the deadline set by this Hearing Officer. [10]

## **Findings of Fact**

Student is a 16-year-old boy in the Vilonia School District. Student is a child with a disability who by reason thereof needs special education, related services, supplementary aids and services, supports, accommodations, and/or modifications. Specifically, Student is diagnosed with Autism, is nonverbal (student uses a communication device), has severe deficits in expressive and receptive language, and has moderate delays in behavior and attentiveness. [11] Student has attended the Vilonia School District since the first grade. [12]

On April 4, 2019, the District held an annual review of Student and developed an IEP for Student's 2020-2021 school year. This IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student. [13] Specifically, the IEP contained two behavioral goals, one science goal, one speech and language goal, one basic reading goal, and one early learning math goal. Additionally, Student was to receive direct instruction in soar math, soar literacy, soar science, soar social studies and life skills. [14] Further Student was to receive a one-to-one paraprofessional for 2,040 minutes per week, transportation to and from home, and speech and language pathology services fifteen (15) minutes three (3) times per week.

---

[10] See Hearing Officer File-post hearing briefs.
[11] Parent Exhibits, pg. 104.
[12] Trial Vol. V., pg. 165.
[13] Parent Exhibits, pgs. 104-105, 110-121, 109.
[14] Id., at 109.

Exhibit A to Complaint

All Student's placement was in the special education classroom.[15] Parent attended the annual review and helped develop Student's 2019-2020 IEP.

On April 2, 2020, an annual review was held to discuss Student's progress and develop an IEP for Student's 2020-2021 school year. This was during COVID-19 and Parent participated via zoom.[16] This IEP developed for the 2020-2021 school year was missing page one which made it difficult to determine the start and end date of the IEP. What was possible to find was that on the services page it had a start date of 8-13-2020 and an end date of 5-26-2021 for duration of the services. The IEP did include a statement of Student's present level of academic achievement that stated Student is nonverbal and unable to express his wants, needs, and tell when he is sick or hurt. He currently performs below grade level academically in all areas. Student requires a one-to-one paraprofessional, and an iPAD with proloquo2go for communication. Student made minimum progress on most of his goals and objectives. Student made huge improvements in his behavior and his ability to generalize skills across staff members. Student's biggest challenge continues to be communication. Student made minimum progress on speech language goals.[17] Services included speech therapy thirty (30) minutes one time per week, Functional Math 1.5 hours four times per week, Functional Literacy 1.5 hours four times per week and Daily living skills 1.5 hours four times per week.[18] A one to one paraprofessional was no longer listed as a related service and instead was moved to the special factors page and listed as a classroom accommodation.[19] The IEP included one English Language Arts goal, one Mathematics goal,

_____

[15] Id.
[16] Parent Exhibits, pg. 85.
[17] Id., at pgs. 86-87.
[18] District Exhibits, pg. 92.
[19] Id., at pg. 91.

Exhibit A to Complaint

two English-History, Social Study, Science, Tech Subjects goals, one Factor-career goal and one activities of daily living goal.[20]

On March 2, 2021, a facilitated IEP meeting was held to address Parent's concerns regarding assistive technology needs of Student.   During this IEP meeting the committee determined that Student would receive an Assistive Technology evaluation by circuit referral in order to determine Student's need for assistive technology in order to access education.  It was determined that pending the outcome of the assistive technology evaluation, Student would have access to a touchscreen device in the school environment, and goals would be implemented in Student's IEP if deemed necessary.[21]

On April 2, 2021, an IEP team meeting was held via phone conference in order to conduct an annual review of progress.  Student's progress was reviewed and discussed.  It was determined that Student would continue current placement in the self-contained classroom for the remainder of the 2020-2021 school year.  Student will continue to receive direct speech therapy services and occupational therapy services on a consultative basis. The IEP team discussed the development of Student's 2021-2022 IEP but that was rejected because Parent had concerns about placement and wanted to hold off until Student's assistive technology evaluation was completed so that appropriate recommendations/accommodations could be discussed, and changes made to his IEP as needed.  The team agreed to meet in May to develop Student's 2021-2022 IEP and also a transition plan was to be developed at that time.[22]

On May 21, 2021, an annual review was held to discuss Student's progress during the 2020-2021 school year and to develop an IEP for Student for the 2021-2022 school year.

---

[20] Id., at pgs. 94-100.
[21] Id., at pg. 85.
[22] District., pgs. 108-109.

Exhibit A to Complaint

Student's 2021-2022 IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student.[23] Because the District's documents are very unorganized and often incomplete or not dated it is difficult for this hearing officer to get a clear chronological picture. Nonetheless, it appears that Student's 2021-2022 IEP included direct instruction in English Exploration, Math Exploration, Science Exploration, History Exploration Transition 1 and PE. Additionally, Student was to receive Speech Therapy for fifteen (15) minutes twelve (12) times per month and consultative occupational therapy for thirty (30) minutes one time per month. The IEP included one Speech Therapy goal, one math goal, one English goal, one science goal, one social studies goal and one life skills goal.[24]

Sometime after the start of the 2021-2022 school year an IEP meeting was held to discuss Parent's concerns about Student's sensory room. Parent was not aware of the current set up but was concerned there was a small corner he was utilizing to calm down. The occupational therapist explained that she developed a list of activities/resources Student can utilize prior to becoming upset. It was discussed that Student will have built in breaks into his daily schedule.[25]

On September 9, 2021, an IEP meeting was held, and a transition plan was developed for Student.[26] Parent completed the Parent transition survey where she made it clear that she wanted the focus to be on life and job skills more than academics.[27]

---

[23] District Exhibits, pgs. 166-181.
[24] Id., at pgs. 175-177.
[25] District Exhibits, pg. 166.
[26] Id., at pg. 171.
[27] Id., at pg. 202.

Exhibit A to Complaint

On September 20, 2021, Parent filed a state complaint with the Arkansas Department of Education Office of Special Education, alleging that Student's 2021-2022 IEP was not being followed by the District and listing numerous alleged violations.[28]

On October 7, 2021, a facilitated IEP meeting was held to review and update Student's IEP.[29]  Parent requested time to review the IEP and reconvene the committee on October 11, 2021, at 2p.m. to finalize the IEP.  However, Parent emailed stating she did not have time to review the paperwork over the weekend.  This meeting was rescheduled for October 26, 2021, but Parent had a medical emergency, and the meeting was rescheduled for November 1, 2021.  Due to Parent having to pick up her daughter from school she requested to schedule another meeting to complete the development of the IEP.[30]

On November 19, 2021, that Arkansas Department of Education, Division of Elementary and Secondary Education Office of Special Education issued its decision regarding Parent's State Complaint.  The Department found that the District failed to provide appropriate speech services because Student did not have annual speech therapy goals in the IEP implemented on August 18, 2021 as required, however, the District IEP team collected data, met and developed new speech therapy goals effective September 16, 2021, and the District provided Student speech therapy during the interim, therefore no corrective action was required.  The investigation also concluded that the District removed academic goals without supporting data.  The investigation required the Student's IEP team gather data regarding Student's academic and functional strengths and needs, and then meet to review/revise Student's IEP goals based on current data no later than December 16, 2021.

---

[28] Id., at pgs. 237-243.
[29] Id., at pg. 269.
[30] Id., at pg. 270-272.

Exhibit A to Complaint

On December 8, 2021, the IEP team met. Parent discussed her concern about Student attending classes outside of PE. Parent completed the AFLS. The committee discussed reviewing Parent's input on the AFLS assessment to assist in the development of the IEP. Parent requested not to add additional goals based on her input at this time but maybe at the annual review. Parent discussed training for staff on Proloquo2Go, the communication system Student uses. Parent also requested to discuss the Alternate Pathway verses graduation based on IEP goals. She wants Student to graduate on his IEP goals instead of credit. Parent discussed that since Student cannot understand the discipline and attendance policies, he should not be expected to adhere to them. The committee discussed coming up with specific expectations for behavior and that for attendance, Parent will notify the District if he is home for illness and they will be excused. It was also discussed that Student is still exhibiting self-injurious behavior and everyone agreed that if self-injurious behavior or incidents of crying occur for longer than ten (10) minutes the nurse will be contacted to administer medication provided by Parent. Parent will be notified by classroom teacher that the medication was administered. If the self-injurious behavior continues for 15 minutes after medication administration, then Parent will be notified and will determine is she wishes to pick Student up from school.[31] Parent submitted an outside speech/language evaluation for the committee to review and consider the recommendations. At the facilitated conference on October 7, 2021, consent was obtained to complete an FBA, but Parent emailed revoking that consent. Based on input from staff Student continues to display self-injurious behaviors and it was determined an FBA would be conducted to assist in addressing those behaviors. Present levels of performance were discussed, and goals were updated. Student will not participate in the alternate pathway to graduation. He will work toward

---

[31] District Exhibits, pg. 292.

Exhibit A to Complaint

a certificate, based on this, his schedule of services was changed to include rec/leisure, vocational skills, domestic skills, functional academics, community skills, 1 to 1 paraprofessional and speech therapy.[32]

On January 10, 2022, an IEP meeting was held because Parent requested a meeting to discuss the previous IEP that was developed on December 8, 2021. Parent wanted to discuss the SETT evaluation, the FBA, and the drop off and pick up process. The committee also updated the special factors page to reflect the drop off and pick up process. Specifically, that because Student gets overstimulated in large groups that Parent would drop Student off and pick Student up at an alternate location.[33] The committee discussed the FBA process, and it was determined that once Mrs. Jenson communicates with Easter Seals regarding the SETT she will communicate with Parent. The committee also discussed how committee members will communicate going forward.[34] The committee made a communication plan that if Parent had a concern she would notify the special education teacher, the special education director and any additional staff member necessary related to the concern. Staff would have two business days to respond to the email. If staff had concerns and weren't comfortable addressing it with Parent they would notify the special education director to schedule a meeting with Parent.[35]

On March 9, 2022, the committee met to review the FBA. The Board-Certified Behavior Analysis (BCBA) attended the meeting and reviewed the FBA and her recommendations to promote positive behaviors. The committee determined that a behavior plan to address the maladaptive behaviors documented on the FBA, BCBA training to support the implementation of the BIP ongoing support by the BCBA to monitor and assist with the BIP, behavior goals,

---

[32] Id., pg. 344.
[33] Id., pg. 370.
[34] Id.
[35] Id., pg. 382.

Exhibit A to Complaint

First-Then, and classroom teacher will model use of proloquo2Go app will all be added to the IEP.[36]

Sometime in March while Student was out sick, Holly McCord, Student's one on one paraprofessional for many years was reassigned.  On March 29, 2022, Parent attempted to drop Student off for school at the alternate location discussed in the IEP.  Student was taking new medication and Parent wished to explain what side effects to watch for to the teacher and paraprofessionals and asked if Keith Renuard (Student's teacher) could come out and speak with her.  Ronnie Simmons, the principal, comes up and tells Parent she needs to speak with the nurse.  Parent responds that the teacher and paraprofessionals need to know the side effects to look for.  Again Mr. Simmons stated she needed to speak with the nurse.  Parent then states she will speak with the nurse after she drops Student off. Then Parent ask if he has a 1 to 1 paraprofessional and Mr. Simmons responded that Mr. Renuard has a classroom, and everything is taken care of.  Parent then states that she cannot leave Student at school unless he has a one-on-one paraprofessional at which time Mr. Simmons responds, "okay well you can just take him on home then." [37]  At this point Parent takes Student home.  Parent attempts to set up a facilitated IEP.  However, on April 8, 2022, Student is disenrolled from the Vilonia School District by Ronnie Simmons, school principal for missing 10 consecutive days of school.[38]  No one contacted Parent to notify her that Student had been unenrolled.

On April 18, 2022, a facilitated IEP meeting is scheduled.  The team waited forty-five minutes for Holly McCord (Student's previous paraprofessional since the fourth grade), but were

_____

[36] Id., pg. 392.
[37] Recording Simmons telling me to take Student home.
[38] Transcripts vol. I., pg. 88.

12

Exhibit A to Complaint

later told that Ms. McCord had been informed that if she wanted to attend she needed to take personal time off.[39]

Parent continued to attempt to schedule a facilitated IEP meeting.  On April 21, 2022, the facilitator called mom to tell her they could not have the facilitated IEP meeting because Student had been dropped from school.[40] The Facilitator tells mom that Student was dropped the Friday before the meeting.[41]

Student did not receive services during this time even though he had an IEP that was in place until May 26, 2022.  No IEP meeting was held, and there was no evidence presented that the District sent any notices of conference to mom.  In July 2022, Jennifer Jensen reached out to Parent to request that she return the District's equipment that had been provided to Student per his IEP.  There was an email exchange and at one point Mrs. Jensen explained that Parent would need to reenroll Student in the District.

## **DISCUSSION AND CONCLUSIONS OF LAW**

### **General Legal Principles**

In general, the burden of proof is viewed as consisting of two elements: the burden of production and the burden of persuasion. Before consideration of the Parents' claims, it should be recognized that the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). Accordingly, the burden of persuasion, in this case, must rest with the Parent.

---

[39] Transcripts vol. IV., pg. 183.
[40] Recording Facilitator telling me JJ dropped Student from roll before the IEP meeting.
[41] Id.

Exhibit A to Complaint

In the role of factfinders, special education hearing officers are charged with the responsibility of making credibility determinations of the witnesses who testify. *Albright ex rel. Doe v. Mountain Home Sch. Dist.* 926 F.3d 943 (8th Cir. 2019), *J. P. v. County School Board*, 516 F.3d 254, 261 (4th Cir. Va. 2008). This hearing officer found each of the witnesses who testified to be credible (except as noted below) in that they all testified to the facts to the best of their recollection; minor discrepancies in the testimony were not material to the issues to be determined and, in any event, were not deemed to be intentionally deceptive.

The weight accorded the testimony, however, is not the same as its credibility. Some evidence, including testimony, was more persuasive and reliable concerning the issues to be decided, discussed as necessary below. The documentation and testimony were sometimes conflicting, although the hearing officer does not necessarily find that any one witness was intentionally untruthful, these inconsistencies did play a role in the hearing officer's decisions. In reviewing the record, the testimony of all witnesses and each admitted exhibit's content were thoroughly considered in issuing this decision, as were the parties' post hearing briefs.

**Applicable Legal Principles**

The IDEA requires the provision of a "free appropriate public education" (FAPE) to children who are eligible for special education services. 20 U.S.C. § 1412. FAPE consists of both special education and related services. 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17. Decades ago, in *Hendrick Hudson Central School District Board of Education v. Rowley*, 458 U.S. 176 (1982), the U.S. Supreme Court addressed these statutory requirements, holding the FAPE mandates are met by providing personalized instruction and support services that are reasonably calculated to benefit educationally from the instruction, provided that the procedures set forth in the Act are

Exhibit A to Complaint

followed. The Third Circuit has interpreted the phrase "free appropriate public education" to require "significant learning" and "meaningful benefit" under the IDEA. *Ridgewood Board of Education v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).

Districts meet the obligation of providing FAPE to eligible students through development implementation of an IEP that is " 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's individual circumstance". The U.S. Supreme Court considered the application of the *Rowley* standard, and it observed that an IEP "is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F. v. Douglas County School District* RE-1, 137 S. Ct. 988, 999, 197 L.Ed.2d 335, 350 (2017). The IEP must aim to enable the child to make progress. The essential function of an IEP is to set out a detailed individualized program for pursuing academic and functional advancement in all areas of unique need. *Endrew F.*, 137 S. Ct. 988, 999 (citing Rowley at 206-09). The *Endrew* court thus concluded that "the IDEA demands ... an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 137 S. Ct. at 1001, 197 L.Ed.2d at 352.

*Endrew*, *Rowley*, and the IDEA make abundantly clear, the IEP must be responsive to the child's identified educational needs. See 20 U.S.C. § 1414(d); 34 C.F.R. § 300.324. However, a school district is not required to provide the "best" program, but rather one that is appropriate in light of a child's unique circumstances. *Endrew F.* In addition, an IEP must be judged "as of the time it is offered to the student, and not at some later date." *Fuhrmann v. East Hanover Board of Education*, 993 F.2d 1031, 1040 (3d Cir. 1993).

"The IEP is 'the centerpiece of the statute's education delivery system for disabled children.' " *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.* RE-1, U.S. 137 S. Ct. 988,

Exhibit A to Complaint

994, 197 L. Ed. 2d 335 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). An IEP is a comprehensive program prepared by a child's "IEP Team," which includes teachers, school officials, the local education agency (LEA) representative and the child's parents. An IEP must be drafted in compliance with a detailed set of procedures. 20 U.S.C. § 1414(d)(1)(B). An IEP must contain, among other things, "a statement of the child's present levels of academic achievement," "a statement of measurable annual goals," and "a statement of the special education and related services to be provided to the child." Id. § 1414(d)(1)(A)(i). A free appropriate public education (FAPE), as the IDEA defines it, includes individualized goals, "specially-designed instruction" and "related services." Id. § 1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction. Id. §§ 1401(26), (29). A school district must provide a child with disabilities such special education and related services "in conformity with the [child's] individualized education program," or "IEP." 20 U.S.C. § 1401(9)(D).

When formulating an IEP, a school district "must comply both procedurally and substantively with the IDEA." *Rowley*, at 206-07 A procedural violation occurs when a district fails to abide by the IDEA's safeguard requirements. A procedural violation constitutes a denial of a FAPE where it "results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010). A substantive violation occurs when an IEP is not "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Andrew F*. The IDEA further provides that if a parent refuses to consent to the receipt of special education and related services, or fails

16

Exhibit A to Complaint

to respond to a request to provide such consent, "the local educational agency shall not be considered to be in violation of the requirement to make available a free appropriate public education to the child for the failure to provide such child with the special education and related services for which the local educational agency request such consent." 20 U.S.C. 1414(a)(1)(D)(ii)(III)(aa).  Although a parent always retains the right to withhold consent, after consent is withheld, the school district cannot be held liable for denying a FAPE.  Additionally when parents waive their children's rights to services, school district may not override their wishes.  *Fitzgerald ex rel. S.F. v. Camdenton R-II School District*, 439 F.3d 773 (8th Cir. 2006); *Schoenfeld v. Parkway School District*, 138 F.3d 379 (8th Cir. 1998).

Pursuant to Part B of the IDEA, states are required to provide a FAPE for all children with disabilities between the ages of three and twenty-one. 20 U.S.C. § 1412(a); 34 C.F.R. §300.300(a).  In 1982, in *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, the U.S. Supreme Court addressed the meaning of FAPE and set forth a two-part analysis that must be made by courts and hearing officers in determining whether a school district has failed to provide FAPE as required by federal law. 458 U.S. 176, 206-07 (1982). Pursuant to Rowley, the first inquiry that a court or hearing officer must make is that of whether the State, i.e. local educational agency or district, has complied with the procedures set forth in the IDEA. Thereafter, it must be determined whether the IEP(s) developed pursuant to IDEA procedures was reasonably calculated to enable the student to make appropriate progress in light of his specific circumstances. *Endrew F.*

Exhibit A to Complaint

## PROCEDURAL VIOLATIONS

Regarding the first inquiry, that of whether the District complied with the procedures set forth in the IDEA, Parent alleges the District summarily dismissed Student from special education when they unilaterally disenrolled Student for nonattendance.  Parent also alleges that the District failed to develop an IEP for the 2022-2023 school year.

On March 29, 2022, when Parent attempted to drop Student off for school at the alternate location discussed in the IEP, she asked the principal, Mr. Simmons about whether Student had a one-to-one paraprofessional, Mr. Simmons responded that Mr. Renuard has a classroom and everything was taken care of.  Parent then responded that she could not leave Student at school unless he had a one-to-one paraprofessional and Mr. Simmons responded, "Okay well you can just take him on home then."[42]  The Parent then proceeded to request a facilitated IEP meeting.  On April 18, 2022 a facilitated IEP meeting was held and the parties waited for forty five minutes for Holly McCord(Student's paraprofessional since the fourth grade) to arrive, but Ms. McCord had been notified by the District that because she was no longer Student's paraprofessional and if she wanted to attend the facilitated IEP or any IEP meeting she would need to take personal time.[43]  This facilitated IEP was cancelled because Ms. McCord could not attend and the Parent wanted her present as she felt she had the most knowledge about Student's needs as she had only recently been removed as Student's one on one paraprofessional.  The facilitated IEP meeting was to be rescheduled when Ms. McCord could attend.  On April 21, 2022, the facilitator called mom to tell her they could not have the facilitated IEP meeting

---

[42] Recording Simmons telling me to take Student home.
[43] Transcript, Vol. IV., pg. 183.

Exhibit A to Complaint

because Student had been dropped from school.[44] The Facilitator told mom that Student was dropped the Friday before the meeting.[45]

Both the superintendent and Mrs. Jenson testified that even after Student was unenrolled they had an obligation to continue to provide Student a FAPE.[46] Mrs. Jenson stated that "If we knew he was a resident here and he was here, yes. But I didn't know what had happened. I was not informed of anything."[47] Student lived on Main Street; the principal had hand delivered an IEP to mom at that address, the District had no evidence that Student had moved out of the District. To the contrary, Parent was scheduling facilitated IEP meetings to address her concerns about the paraprofessional.

Ark. Special education regulations 6.05.5 Evaluations before change in eligibility states:

6.05.5.1 Except as provided in paragraph 6.05.5.2 of this section, a public agency must evaluate a child with a disability in accordance with 34 CFR 300.304 through 300.311 before determining that the child is no longer a child with a disability.

Here the District dismissed the student from special education when they summarily unenrolled him from the District knowing that Parent was attempting to schedule a facilitated IEP meeting, that Parent had a disagreement over the paraprofessional, and that student was not required to follow the District attendance policy per his IEP.

Further, once Student was unenrolled from the District it was not relieved of its obligation to provide Student a FAPE. The IDEA expressly requires states to make a FAPE "available to all children with disabilities residing in the State between the ages of 3 and 21...."

---

[44] Recording Facilitator telling me JJ dropped Student from roll before the IEP meeting.
[45] Id.
[46] Transcript, Vol. IV., pg. 190-191.
[47] Id.

Exhibit A to Complaint

20 U.S.C. § 1412(a)(1)(A)(emphasis added); see also 34 C.F.R. § 300.101 ("A free appropriate public education must be available to all children residing in the State between the ages of 3 and 21 ....") (emphasis added). Neither this subsection nor the limiting provision immediately following it restricts the state's obligation to only publicly enrolled children. See 20 U.S.C. § 1412(a)(1)(B) (exempting states from FAPE obligations in certain circumstances based on child's age). A second statutory provision in the Act requires each LEA to have in effect an IEP at the beginning of each school year for each disabled child "in the agency's jurisdiction." 20 U.S.C. § 1414(d)(2)(A) (emphasis added); see also 34 C.F.R. § 300.323(a).

Here, once the District unenrolled Student they still had an obligation to provide Student with a FAPE. The evidence shows that the District was aware that Student was still in the District and the District by the testimony of Mr. Simmons, Mr. Adams, and Mrs. Jensen understood it had a continued obligation to Student but failed to act on that obligation. No services were offered to Student after the District unenrolled him and further, no IEP was developed for the 2022-2023 school year.

Additionally, Congress enacted the IDEA for the purpose of ensuring that all children with disabilities have access to a "free appropriate public education." 20. U.S.C. 1400(d)(1)(A). In order to ensure that all children with disabilities receive a FAPE, school districts are required to satisfy a "child find" obligation. 20 U.S.C. 1412(a)(3). Specifically, districts must ensure that:

> All children with disabilities residing in the State, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. §1412(a)(3)(A).

20

Exhibit A to Complaint

Child find extends to children who are suspected of having a disability and in need of special education, even though they are advancing from grade to grade and performing on grade level.  34 C.F.R. §300.111(c)(1).  Once a child is identified as potentially having a disability, the child's school district is required to conduct a full and individual evaluation to determine whether the child has a disability and is in need of special education and related services. Further, the Arkansas Department of Education special education Rules and regulations 3.01 states:

> Each local educational agency is responsible for ensuring that all children
> with disabilities from birth to twenty-one (21) years within its jurisdiction
> and in need of special education and related services are identified, located
> and evaluated, regardless of the severity of their disability.

After the District unenrolled Student from the District it had an ongoing child find obligation, which it also failed to meet.

Having analyzed the first prong of the FAPE analysis, specifically that of procedural violations, and determined that the District summarily dismissed Student from special education when they unilaterally unenrolled Student for nonattendance, failed to develop an IEP for Student for the 2022-2023 school year and failed to meet its obligation under child find after unilaterally unenrolling Student,  it is now necessary to consider whether these procedural violation resulted in a substantive denial of FAPE to Student. Even if a school district violated IDEA procedures, it does not automatically follow that the school district has denied the child a FAPE.  K.E. v. Indep. Sch. Dist. 15, 647 F.3d 795, 804 (8th Cir. 2011).  Rather, a school district's educational plan for a given student will only be set aside for IDEA procedural violations "if the procedural inadequacies compromised the pupils right to an appropriate education, seriously

Exhibit A to Complaint

hampered the parent's opportunity to participate in the formulation process or caused a deprivation of educational benefit." Id. At 804-805.  Here all three procedural violations caused a deprivation of educational benefit.  Student did not receive any educational benefit when the District failed to provide Student any services after unenrolling him on April 8, 2022.  This both prevented Student from receiving any educational benefit but also seriously hampered Parent's opportunity to participate.  Student cannot receive educational benefit, nor can Parent have any opportunity to participate, when the district failed/refused to develop an IEP for Student for the 2022-2023 school year. Lastly, once Student was unenrolled District had a child find obligation that they failed to act on, whereby seriously hampering the Parent's opportunity to participate and causing deprivation of educational benefit to Student.

## CONCLUSION

Having considered Parent's allegations of procedural due process violations, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that District procedurally violated the IDEA by (1) failing to provide Student a FAPE after unenrolling him from the District; (2) failing to develop and have an IEP in place at the start of the 2022-2023 school year; (3) and once the District unenrolled Student failing to meet their obligations under child find.  Further based on the facts and discussion above these procedural violations amounted to a substantive denial of FAPE.

Exhibit A to Complaint

## SUBSTANTIVE VIOLATIONS OF IDEA

It is now necessary to look at the substantive violations alleged by Petitioner.

The IEP is the guiding document and primary method for providing special education services to disabled children under the IDEA. *Honig v. Doe*, 484 U.S. 305, 311 (1988). "Through the development and implementation of an IEP, the school provides a FAPE that is 'tailored to the unique needs of a particular child.'" *Paris Sch. Dist.*, 2017 WL 1234151, at *5 (citing *Endrew F.*, 2017 WL 1066260, at *1000). An IEP is not designed to be merely a form but, instead, a substantive document that is developed only after a district has carefully considered a student's "present levels of achievement, disability, and potential for growth." *Id.* (citations omitted). Pursuant to *Endrew F.*, a district "must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 2017 WL 1066260, at *1000. For most students, to comply with this standard, providing FAPE "will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade." *Id.* However, in the event that this is not possible, the education of a disabled child still needs to be "appropriately ambitious" in light of a student's individual circumstances. *Id.*

Under the IDEA, an IEP must include "a statement of measurable annual goals, including academic and functional goals" that is "designed to" meet the needs resulting from the child's disability so that the child can "be involved in and make progress in the general education curriculum" and "meet each of the child's other educational needs that result from the child's disability." 20 U.S.C. § 1414(d)(1)(A)(i)(II). A school district also must revise an IEP as is "appropriate to address ... any lack of expected progress toward the annual goals and in the general education curriculum," "the results of any reevaluation," or information about the

23

Exhibit A to Complaint

child provided by the parents. *Id.* at § 1414(d)(4)(A)(ii). *K.E. v. Independent School Dist. No.* 15, 647 F.3d 795 (8th Cir. 2011).

I.      **Whether the District failed to provide Student a free appropriate public education during the 2020-2021 school year?**

Student's 2020-2021 IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student.[48]  Specifically, the IEP contained two English language arts goals, two English-history, social study, science, tech subjects goals, one factor career goal, one activities of daily living goal and one mathematics goal.  Additionally, Student was to receive functional math instruction 1.5 hours four times per week, functional literacy instruction 1.5 hours four times a week and instruction in daily living skills 1.5 hours four times per week.[49]  Further Student was to receive a one-to-one paraprofessional for 408 minutes five days per week, transportation to and from home, and speech and language pathology services fifteen (15) minutes twelve (12) times per month.  All Student's instruction was in the self-contained classroom except for PE which Student attended in the gym with his nondisabled peers.[50] The IEP goals progress reports show that Student maintained progress, made some progress, or made good progress on the majority of his goals and objectives.[51] Further, Parent testified that she didn't have any complaints about Student's 8th grade year.  Ms. McCord,

---

[48] District Exhibits, pgs. 15-45.
[49] Id.
[50] Id. At pg. 27.
[51] District Exhibits, pgs. 33-69.

Exhibit A to Complaint

Student's 1:1 paraprofessional testified that during the 2020-2021 school year Student had a "great year" and that he "really started to take off" and "began to blossom" that year.[52]

Having considered Parent's argument that Student's 2020-2021 IEP failed to provide Student a FAPE, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that Student's 2020-2021 IEP was reasonably calculated to enable Student to make progress appropriate in light of his circumstances and thus the District did not substantively violate the requirements of IDEA.

II.     **Whether the District failed to provide Student a free appropriate public education during the 2021-2022 school year?**

On May 21, 2021, an annual review was held to discuss Student's progress during the 2020-2021 school year and to develop an IEP for Student for the 2021-2022 school year. Student's 2021-2022 IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student.[53] Because the District's documents are very unorganized and often incomplete, unsigned or not dated it is difficult for this hearing officer to get a clear chronological picture. Nonetheless, it appears that Student's 2021-2022 IEP developed at the annual review on May 21, 2021, included direct instruction in English Exploration, Math Exploration, Science Exploration, History Exploration Transition 1 and PE. The IEP was amended on December 8, 2021, to provide direct instruction in Functional Academics, Domestic Skills, Community Skills, Vocational Skills and Recreation and Leisure. Additionally, Student was to receive Speech Therapy for fifteen (15) minutes twelve (12) times per month and consultative occupational therapy for thirty (30) minutes one time per month and para support

---

[52] Transcripts, Vol. III, pgs. 181-182.
[53] District Exhibits, pgs. 166-181.

Exhibit A to Complaint

420 minutes five times per week. The IEP included one Speech Therapy goal, one Domestic Skills goal, one functional academics goal, one community skills goal and one vocational skills goal.[54] Testimony from both Mr. Renaurd, Student's classroom teacher and Mrs. McCord, Student's paraprofessional describe a classroom that lacked structure and appropriate instruction. From his testimony it appeared that Mr. Renaurd was overwhelmed with his teaching tasks. From the evidence provided regarding the classroom schedule, it appeared that the paraprofessionals were doing much of the teaching or that there was very little teaching at all occurring throughout the school day.[55] The evidence showed that Student was not receiving direct instruction in English Exploration, Math Exploration, Science Exploration, History Exploration or Transition 1 from the start of 2021-2022 school year to December 8, 2021 when the IEP was amended or in Functional Academics, Domestic Skills, Community Skills, Vocational Skills and Recreation and Leisure as prescribed from December 8, 2021 through the end of Student's 2021-2022 school year. The District in its post hearing brief stated that Mr. Renaurd used the well-known TeachTown and Autism Helper curricula, however, Mr. Renaurd during his testimony was unable to remember much about anything he taught or curriculum he used in his classroom. From Mr. Renaurd's testimony and Mrs. McCord's testimony the classroom appeared to have little structure and that the aids "just did the best they could". The District points out that Mrs. McCord was fired from the District and had a friendship with Parent outside of school and therefore her testimony is biased and should not be believed, except for the part the District used in its post hearing brief where Mrs. McCord stated that Student had a great 8th grade year and really blossomed. I found Mrs. McCord's testimony to be credible regarding Student and the services offered or provided. Additionally, there was inadequate training on

---

[54] Parent Exhibits, at pgs. 12-14.
[55] Parent exhibits, pgs. 506-513.

Exhibit A to Complaint

Student's Proloquo2Go.  The District failed to properly implement Student's 2021-2022 IEP by failing to provide direct instruction in the self-contained classroom as prescribed in his IEP. Additionally, the District failed to provide appropriate training to staff on the use of Student's communication device.

Having considered Parent's argument that Student's 2021-2022 IEP failed to provide Student a FAPE, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that the District's failure to properly implement Student's 2021-2022 IEP denied Student FAPE and substantively violated the requirements of IDEA.

### III.     Whether the District failed to provide Student a free appropriate public education during the 2022-2023 school year?

As noted above, after the District summarily disenrolled Student from the District, the District failed to develop an IEP for the 2022-2023 school year or provide services to Student after unenrolling him. After the District dismissed the student from special education when they summarily unenrolled him from the District knowing that Parent was attempting to schedule a facilitated IEP meeting, that Parent had a disagreement over the paraprofessional, and that student was not required to follow the District attendance policy per his IEP, the District was not relieved of its obligation to provide Student a FAPE.  The IDEA expressly requires states to make a FAPE "available to all children with disabilities residing in the State between the ages of 3 and 21...." 20 U.S.C. § 1412(a)(1)(A)(emphasis added); see also 34 C.F.R. § 300.101 ("A free appropriate public education must be available to all children residing in the State between the ages of 3 and 21 ....") (emphasis added). Neither this subsection nor the limiting provision

Exhibit A to Complaint

immediately following it restricts the state's obligation to only publicly enrolled children. See 20 U.S.C. § 1412(a)(1)(B) (exempting states from FAPE obligations in certain circumstances based on child's age). A second statutory provision in the Act requires each Local Education Agency (LEA) to have in effect an IEP at the beginning of each school year for each disabled child "in the agency's jurisdiction." 20 U.S.C. § 1414(d)(2)(A) (emphasis added); see also 34 C.F.R. § 300.323(a).

Here, once the District unenrolled Student they still had an obligation to provide Student a FAPE. The evidence shows that the District was aware that Student was still in the District and the District by the testimony of Mr. Simmons, Mr. Adams, and Mrs. Jensen understood it had a continued obligation to Student but failed to act on that obligation. No services were offered to Student after the District unenrolled him and further, no IEP was developed for the 2022-2023 school year.

Additionally, having found that the District violated IDEA by summarily removing Student from special education when it unilaterally unenrolled Student from the District, the District had an ongoing obligation to develop an IEP and have one in place when Student started school in August of 2022. The District argues that it did not have to develop an IEP for the 2022-2023 school year because Student was no longer a Student enrolled in the District. I find this argument without merit. The only reason the Student was not enrolled in the District is because the District unilaterally disenrolled Student. I find the testimony of Mrs. Jenson and Mr. Simmons to not be credible when they are discussing they didn't know where the student was or what was happening. The evidence shows Parent was attempting to set up IEP meetings, attended the school's special Olympics program, and yet no one from the District reached out to Parent to help facilitate an IEP meeting or even notified Parent that Student was going to be

Exhibit A to Complaint

disenrolled.  District does not get to stand on these facts as reasons for not meeting its obligations under IDEA.

Having considered Parent's argument that the District's failure to develop an IEP for Student for the 2022-2023 school year, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that the District's failure to develop an IEP for Student for the 2022-2023 school year denied Student FAPE and substantively violated the requirements of IDEA.

**PRIVATE SCHOOL PLACEMENT**

Parents are entitled to reimbursement of expenditures incurred in connection with providing their child a private special education only where the public-school placement violated IDEA and the private school placement was proper under the Act. Florence County School Dist. Four v. Carter, 510 U.S. 7, 16, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); School Committee of Burlington v. Dep't of Education of Mass., 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); Independent Sch. Dist., 88 F.3d at 561. In addition, the United States Court of Appeals for the Eighth Circuit requires parents to "make clear to the [school] district that they want the district to `initiate'" a change in placement before they are eligible for reimbursement. Evans v. District No. 17 of Douglas County, Neb., 841 F.2d 824, 829 (8th Cir. 1988). "[P]arents who unilaterally change their child's placement during the pendency of the review proceedings, without the consent of state or local officials, do so at their own financial risk." Burlington, 471 U.S. at 374, 105 S.Ct. 1996.  Here Parent's entire argument in her post hearing brief is that private school tuition is appropriate because the District agreed to place Student at and pay for Student to attend Compass Academy. However, Parent's request for Due Process was filed on August 12, 2022, and the agreement regarding private school placement was at the resolution

Exhibit A to Complaint

conference held after Parent's Due Process Request was filed.  Therefore, Parent's entire

argument regarding the District's agreement to place at and pay for Student to attend Compass

Academy is outside the scope of this hearing and therefore this hearing officer will not make a

ruling on this issue at this time.  If Parent wanted that issue decided she should have amended

her due process complaint or filed a new due process complaint. There is no evidence that

private school placement was even discussed between Parent and the District prior to the Parent

filing her due process hearing request.  As such, Parent did not ""make clear to the [school]

district that she wanted the district to `initiate'" a change in placement as required before Parent

is eligible for reimbursement. Evans v. District No. 17 of Douglas County, Neb., 841 F.2d 824,

829 (8th Cir. 1988). Therefore, under these facts Parent is not entitled to reimbursement for

private school placement.

### Private School Placement as a Compensatory Service

As discussed above the District failed to provide Student a FAPE during the 2021-2022

school year and failed to develop an IEP for the 2022-2023 school year.  Parent is correct in her

complaint when she states that  Miener v. State of Missouri, 800 F.2d 749, 753 (8th Cir. 1986),

held:

> Like the retroactive reimbursement in Burlington,imposing
> Liability for compensatory educational services on the defendants'
> Merely requires [them] to belatedly pay expenses that [they] should have
> paid all along, 105 S.Ct. at 2003.  Here, as in Burlington, recovery is
> necessary to secure the child's right to a free appropriate public education. Id.
> We are confident that Congress did not intend the child's entitlement to a free
> Education to turn upon her parent's ability to 'front' its costs.

In addition to a denial of FAPE, a claim for private school tuition as compensatory education

must include proof that the school district cannot prospectively provide a FAPE.  In Indp. Sch.

Dist. No. 283 v. E.M.D.H. by & Through L.H., 357 F. Supp. 3d876, 891 (D. Minn. 2019), the

30

Exhibit A to Complaint

district court reversed an award of private school tuition as compensatory education finding, "there is scant evidence concerning whether the District can provide a FAPE prospectively." See Brantley, 936 F. Supp. at 655 (" In order to receive such relieve, Plaintiffs must demonstrate that FAPE is not possible in public schools…It is further noted that the possibility of FAPE in the District must be more than theoretical. Excessive delay in Byron's placement or repeated improper placements may demonstrate that FAPE is not possible and that a private school placement may be appropriate.").

Finally, a claim for private school tuition as compensatory education must include proof that the private school "is an 'appropriate' placement within the meaning of the IDEA." Sneitzer v. Iowa Dept. of Educ., 796 F.3d 942, 948 (8th Cir. 2015) In order to get reimbursement for a private placement, two requirements must be established: that the school failed to provide a FAPE; and that the private school is an "appropriate" placement within the meaning of the IDEA. Forest Grove Sch. Dist. v. T.A.,557 U.S. 230, 242–43 n. 9, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009) ; Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.,471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). An appropriate placement is one that will "provide the Student a FAPE consistent with the IEP." Id. A private placement need not satisfy a least restrictive environment requirements to be appropriate. C.B. ex re. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn, 636 F.3d 981, 991 (8th Cir. 2001).

Applying the law to the facts in this case, Parent failed to present sufficient evidence that the District cannot prospectively provide Student a FAPE, as the District did provide Student a FAPE in the 2020-2021 school year which shows that the District is capable of prospectively providing Student a FAPE. Based on the evidence presented and the timeframe of this hearing Parent is not entitled to private school placement as a compensatory service.

Exhibit A to Complaint

## Conclusion

The results of the testimony and evidence warrant a finding for the Parent. Specifically, Parent introduced sufficient evidence in the record to establish by preponderance of the evidence that District denied Student a FAPE between August 12, 2021-August 12, 2022. District is hereby ordered to take the following actions regarding Student:

1. Within 30 days the District shall have Student comprehensively evaluated for the purpose of obtaining current information so as to determine Student's deficits. This evaluation is to be completed by an evaluator who is not an employee or contractor with the District.

2. Within 30 days the District shall complete an assistive technology evaluation of Student for the purpose of obtaining information on Student's assistive technology needs. This evaluation is to be completed by an evaluator who is not an employee or contractor with the District.

3. Within 30 days the District is to complete a speech language therapy evaluation of Student to determine his current speech and language therapy needs. This evaluation is to be completed by an evaluator who is not an employee or contractor with the District.

4. Within 30 days the District shall complete an occupational therapy evaluation of Student to determine occupational therapy needs and sensory deficits if any. This evaluation is to be completed by an evaluator who is not an employee or contractor with the District.

32

Exhibit A to Complaint

5.  Within 30 days the District shall complete an evaluation by a BCBA, agreeable to parent, to include at a minimum a skills assessment and a practical functional assessment of problem behavior to determine Students behavior needs. The BCBA shall not be an employee or contractor with the District.

6.  Within 15 days after the completion of the comprehensive evaluation, assistive technology evaluation, Speech and Language evaluation, occupational therapy evaluation, and the evaluation completed by a BCBA, the District shall schedule and hold a facilitated IEP meeting to include at a minimum the BCBA, and the evaluators of the comprehensive evaluation, assistive technology evaluation, speech and language evaluation and occupational therapy evaluation. The IEP team shall develop an appropriate IEP for Student using the recommendations of the outside evaluators, parental input and input from the IEP team members.

7.  The IEP team shall meet every thirty (30) days during the implementation of Student's IEP to discuss Student's progress, address any of Parent's concerns and make any necessary changes to Student's IEP. These meeting shall continue throughout the 2023-2024 school year.

8.   Within 15 days after the facilitated IEP meeting all staff responsible for providing services to Student shall be trained on Student's communication device.

9.  During the 2021-2022 school year, per his IEP Student was entitled to approximately 48,000 minutes of direct instruction. Approximately 18,000 minutes was direct instruction in English Exploration 9, Math Exploration 1, Science Exploration 1, Civis Exploration, Workplace Readiness 1 and life Skills. Approximately 30,000 minutes was direct instruction in Functional Academics, Domestic Skills, Community

33

Skills, Vocational Skills and recreation and Leisure.   In order to compensate Student

for the denial of FAPE and put Student in the position he would have been absent the

FAPE denial the District shall provide 28,000 minutes of Applied Behavior Analysis

(ABA) therapy by a BCBA, agreeable to the parent, in Student's home and

community focused on Functional Academics, Domestic Skills, Community Skills,

Vocational Skills and recreation and Leisure. The compensatory award is lowered

from 48,000 minutes to 28,000 minutes because Student will be receiving one on one

instruction instead of instruction in a classroom with other students.  The 28,000

minutes shall be provided in time intervals determined by the BCBA.

Parent also alleges that the District's conduct constitutes disability discrimination in

Violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and Title II of the

Americans with Disabilities Act, 42 U.S.C. §12131-12165. This Hearing Officer has no

jurisdiction over disability discrimination claims. See ADE Spec. Ed. Rules §10.01.22.1.

Accordingly, to the extent Parent's due process complaint raises disability discrimination claims,

those claims are dismissed.

### Finality of Order and Right to Appeal:

The decision of this Hearing Officer is final.  A party aggrieved by this decision has the

right to file a civil action in either Federal District Court or a State Court of competent

jurisdiction, pursuant to the Individuals with Disabilities Education Act, within ninety (90) days

after the date on which the Hearing Officer's Decision is filed with the Arkansas Department of

Education.

Exhibit A to Complaint

Pursuant to Section 10.01.36.5, Special Education and Related Services:  Procedural Requirements and Program Standards, Arkansas Department of Education 2008, the Hearing Officer has no further jurisdiction over the parties to the hearing.

**IT IS SO ORDERED.**

*Dana McClain*

**HEARING OFFICER**

6/25/2023

**DATE**

35

### ARKANSAS DEPARTMENT OF EDUCATION

### Special Education Unit

**PETITIONER**

**VS.**                    **Case No. H-24-01**

**VILONIA SCHOOL
DISTRICT**                                **RESPONDENT**

### HEARING OFFICERS FINAL DECISION AND ORDER

Exhibit B to Complaint

**ISSUES PRESENTED:**

Whether the Vilonia School District (hereinafter "District" or "Respondent") denied ▮▮▮▮▮▮▮ (hereinafter "Student") a free, appropriate, public education (hereinafter "FAPE"), between August 13, 2022 through July 13, 2023,  in violation of certain procedural and substantive requirements of the Individuals with Disabilities Education Act of 2004, 20 U.S.C. 1400-1485, as amended (hereinafter referred to as "IDEA"), by:  (1) failing to provide Student a free appropriate public education in a timely manner before he was enrolled in Compass Academy for the 2022-2023 school year; and (2) Whether Compass Academy is an appropriate placement.

**Procedural History:**

On July 13, 2023, the Arkansas Department of Education (hereinafter referred to as the "Department" or "ADE") received a request to initiate a due process hearing from ▮▮▮▮ ▮▮▮▮▮ ("Parent" or "Petitioner", as the Parent of ▮▮▮▮▮▮▮ (hereinafter referred to as "Student"), against the Vilonia School District (hereinafter referred to as "District" or "Respondent").  Parent requested the hearing because she believed the District failed to comply with the Individuals with Disabilities Education Act of 2004, 20 U.S.C. 1400-1485, as amended (hereinafter referred to as "IDEA") and the regulations set forth by the Department by not providing Student with appropriate special education services, as noted supra in the statement of issues. [1]

In response to the Parent's request for a Due Process hearing, the Department assigned the case to this impartial hearing officer.  Thereafter, a prehearing conference was scheduled for August 14, 2023, and the Due Process hearing was scheduled for August 16-18, 2023.

_____

[1] See hearing officer File-Petitioner Complaint.

Exhibit B to Complaint

This is the second due process hearing involving these same parties.  The first due process hearing was number H-23-08.  A decision was issued in H-23-08 on June 25, 2023.  When asked if the parties wished to incorporate the record from H-23-08 into this case (H-24-01) both parties stated affirmatively.[2]

The Prehearing conference was conducted via Zoom on August 14, 2023.[3] Counsel for both the Parent and the District participated in the prehearing conference.  During the prehearing conference, the parties discussed unresolved issues to be addressed at the hearing, as well as the witnesses and evidence which would be necessary to address the same.[4]

Thereafter the due process hearing in this matter began as scheduled On August 16, 2023.  Testimony was heard in this case on August 16th and 30th, 2023.  Present for the Due Process Hearing were Theresa Caldwell, attorney for Petitioner, Jay Bequette, attorney for the District, ███████████ Parent, Audra Alumbaugh, Advocate, Jennifer Jensen, Special Education Director, and Rhonda Standridge, Administrative Assistant.

The following witnesses testified in this matter: Courtney Williams (Zoom), Ronnie Simmons, ███████████ and Doug Adams.[5]

 Having been given jurisdiction and authority to conduct the hearing pursuant to Public Law 108-446, as amended and Arkansas Code Annotated §6-41-202 through §6-41-223, Dana McClain, J.D., Hearing Officer for the Arkansas Department of Education, conducted a closed impartial hearing.

---

[2] See prehearing transcript.
[3] Transcript, prehearing conference.
[4] Id.
[5] Transcripts, Vol. I.

3

Exhibit B to Complaint

Both parties were offered the opportunity to provide post-hearing briefs in lieu of closing statements, and both timely submitted briefs in accordance with the deadline set by this Hearing Officer. [6]

Additionally, the facts from H-23-08 (Parent's first due process hearing) are included in the findings of fact in this case because this hearing officer believes the history of this case is relevant in how these parties got to the position they currently find themselves.

### **Findings of Fact**

Student is a 16-year-old boy in the Vilonia School District.  Student is currently enrolled at Compass Academy a private school located in Conway Arkansas.  Student is a child with a disability who by reason thereof needs special education, related services, supplementary aids and services, supports, accommodations, and/or modifications.  Specifically, Student is diagnosed with Autism, is nonverbal (student uses a communication device), has severe deficits in expressive and receptive language, and has moderate delays in behavior and attentiveness. [7] Student has attended the Vilonia School District since the first grade. [8]

On April 4, 2019, the District held an annual review of Student and developed an IEP for Student's 2020-2021 school year.  This IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student. [9]  Specifically, the IEP contained two behavioral goals, one science goal, one speech and language goal, one basic reading goal, and one early learning math goal.  Additionally, Student was to receive direct instruction in soar

---

[6] See Hearing Officer File-post hearing briefs.
[7] H-23-08-Parent Exhibits, pg. 104.
[8] H-23-08-Trial Vol. V., pg. 165.
[9] H-23-08-Parent Exhibits, pgs. 104-105, 110-121, 109.

4

Exhibit B to Complaint

math, soar literacy, soar science, soar social studies and life skills.[10] Further Student was to receive a one-to-one paraprofessional for 2,040 minutes per week, transportation to and from home, and speech and language pathology services fifteen (15) minutes three (3) times per week. All Student's placement was in the special education classroom.[11] Parent attended the annual review and helped develop Student's 2019-2020 IEP.

On April 2, 2020, an annual review was held to discuss Student's progress and develop an IEP for Student's 2020-2021 school year. This was during COVID-19 and Parent participated via Zoom.[12] This IEP developed for the 2020-2021 school year was missing page one which made it difficult to determine the start and end date of the IEP. What was possible to find was that on the services page it had a start date of 8-13-2020 and an end date of 5-26-2021 for duration of the services. The IEP did include a statement of Student's present level of academic achievement that stated Student is nonverbal and unable to express his wants, needs, and tell when he is sick or hurt. He currently performs below grade level academically in all areas. Student requires a one-to-one paraprofessional, and an iPAD with proloquo2go for communication. Student made minimum progress on most of his goals and objectives. Student made huge improvements in his behavior and his ability to generalize skills across staff members. Student's biggest challenge continues to be communication. Student made minimum progress on speech language goals.[13] Services included speech therapy thirty (30) minutes one time per week, Functional Math 1.5 hours four times per week, Functional Literacy 1.5 hours four times per week and Daily living skills 1.5 hours four times per week.[14] A one to one

---

[10] H-23-08-Id., at 109.
[11] H-23-08-Id.
[12] H-23-08-Parent Exhibits, pg. 85.
[13] H-23-08-Id., at pgs. 86-87.
[14] H-23-08-District Exhibits, pg. 92.

Exhibit B to Complaint

paraprofessional was no longer listed as a related service and instead was moved to the special factors page and listed as a classroom accommodation.[15]  The IEP included one English Language Arts goal, one Mathematics goal, two English-History, Social Study, Science, Tech Subjects goals, one Factor-career goal and one activities of daily living goal.[16]

On March 2, 2021, a facilitated IEP meeting was held to address Parent's concerns regarding assistive technology needs of Student.   During this IEP meeting the committee determined that Student would receive an Assistive Technology evaluation by circuit referral in order to determine Student's need for assistive technology in order to access education.  It was determined that pending the outcome of the assistive technology evaluation, Student would have access to a touchscreen device in the school environment, and goals would be implemented in Student's IEP if deemed necessary.[17]

On April 2, 2021, an IEP team meeting was held via phone conference in order to conduct an annual review of progress.  Student's progress was reviewed and discussed.  It was determined that Student would continue current placement in the self-contained classroom for the remainder of the 2020-2021 school year.  Student will continue to receive direct speech therapy services and occupational therapy services on a consultative basis. The IEP team discussed the development of Student's 2021-2022 IEP but that was rejected because Parent had concerns about placement and wanted to hold off until Student's assistive technology evaluation was completed so that appropriate recommendations/accommodations could be discussed, and changes made to his IEP as needed.  The team agreed to meet in May to develop Student's 2021-2022 IEP and also a transition plan was to be developed at that time.[18]

---

[15] H-23-08-Id., at pg. 91.
[16] H-23-08-Id., at pgs. 94-100.
[17] H-23-08-Id., at pg. 85.
[18] H-23-08-District., pgs. 108-109.

Exhibit B to Complaint

On May 21, 2021, an annual review was held to discuss Student's progress during the 2020-2021 school year and to develop an IEP for Student for the 2021-2022 school year. Student's 2021-2022 IEP included a statement of Student's present level of academic achievement, a statement of measurable annual goals, and a statement of the special education and related services to be provided to Student.[19] Because the District's documents are very unorganized and often incomplete or not dated it is difficult for this hearing officer to get a clear chronological picture.  Nonetheless, it appears that Student's 2021-2022 IEP included direct instruction in English Exploration, Math Exploration, Science Exploration, History Exploration Transition 1 and PE.  Additionally, Student was to receive Speech Therapy for fifteen (15) minutes twelve (12) times per month and consultative occupational therapy for thirty (30) minutes one time per month.  The IEP included one Speech Therapy goal, one math goal, one English goal, one science goal, one social studies goal and one life skills goal.[20]

Sometime after the start of the 2021-2022 school year an IEP meeting was held to discuss Parent's concerns about Student's sensory room.  Parent was not aware of the current set up but was concerned there was a small corner Student was utilizing to calm down.  The occupational therapist explained that she developed a list of activities/resources Student can utilize prior to becoming upset.  It was discussed that Student will have built in breaks into his daily schedule.[21]

On September 9, 2021, an IEP meeting was held, and a transition plan was developed for Student.[22]  Parent completed the Parent transition survey where she made it clear that she wanted the focus to be on life and job skills more than academics.[23]

---

[19] H-23-08-District Exhibits, pgs. 166-181.
[20] H-23-08-Id., at pgs. 175-177.
[21] H-23-08-District Exhibits, pg. 166.
[22] H-23-08-Id., at pg. 171.
[23] H-23-08-Id., at pg. 202.

Exhibit B to Complaint

On September 20, 2021, Parent filed a state complaint with the Arkansas Department of Education Office of Special Education, alleging that Student's 2021-2022 IEP was not being followed by the District and listing numerous alleged violations.[24]

On October 7, 2021, a facilitated IEP meeting was held to review and update Student's IEP.[25] Parent requested time to review the IEP and reconvene the committee on October 11, 2021, at 2p.m. to finalize the IEP. However, Parent emailed stating she did not have time to review the paperwork over the weekend. This meeting was rescheduled for October 26, 2021, but Parent had a medical emergency, and the meeting was rescheduled for November 1, 2021. Due to Parent having to pick up her daughter from school she requested to schedule another meeting to complete the development of the IEP.[26]

On November 19, 2021, that Arkansas Department of Education, Division of Elementary and Secondary Education Office of Special Education issued its decision regarding Parent's State Complaint. The Department found that the District failed to provide appropriate speech services because Student did not have annual speech therapy goals in the IEP implemented on August 18, 2021 as required, however, the District IEP team collected data, met and developed new speech therapy goals effective September 16, 2021, and the District provided Student speech therapy during the interim, therefore no corrective action was required. The investigation also concluded that the District removed academic goals without supporting data. The investigation required the Student's IEP team to gather data regarding Student's academic and functional strengths and needs, and then meet to review/revise Student's IEP goals based on current data no later than December 16, 2021.

---

[24] H-23-08-Id., at pgs. 237-243.
[25] H-23-08-Id., at pg. 269.
[26] H-23-08-Id., at pgs. 270-272.

Exhibit B to Complaint

On December 8, 2021, the IEP team met.  Parent discussed her concern about Student attending classes outside of PE.  Parent completed the AFLS.  The committee discussed reviewing Parent's input on the AFLS assessment to assist in the development of the IEP. Parent requested not to add additional goals based on her input at this time but maybe at the annual review.  Parent discussed training for staff on Proloquo2Go, the communication system Student uses.  Parent also requested to discuss the Alternate Pathway verses graduation based on IEP goals.  She wants Student to graduate on his IEP goals instead of credit.  Parent discussed that since Student cannot understand the discipline and attendance policies, he should not be expected to adhere to them.  The committee discussed coming up with specific expectations for behavior and that for attendance, Parent will notify the District if he is home for illness and they will be excused.  It was also discussed that Student is still exhibiting self-injurious behavior and everyone agreed that if self-injurious behavior or incidents of crying occur for longer than ten (10) minutes the nurse will be contacted to administer medication provided by Parent.  Parent will be notified by classroom teacher that the medication was administered.  If the self-injurious behavior continues for 15 minutes after medication administration, then Parent will be notified and will determine is she wishes to pick Student up from school.[27]Parent submitted an outside speech/language evaluation for the committee to review and consider the recommendations.  At the facilitated conference on October 7, 2021, consent was obtained to complete an FBA, but Parent emailed revoking that consent.  Based on input from staff, Student continues to display self-injurious behaviors and it was determined an FBA would be conducted to assist in addressing those behaviors.  Present levels of performance were discussed, and goals were updated. Student will not participate in the alternate pathway to graduation.  He will work toward

---

[27] H-23-08-District Exhibits, pg. 292.

Exhibit B to Complaint

a certificate, based on this, his schedule of services was changed to include rec/leisure, vocational skills, domestic skills, functional academics, community skills, 1 to 1 paraprofessional and speech therapy.[28]

On January 10, 2022, an IEP meeting was held because Parent requested a meeting to discuss the previous IEP that was developed on December 8, 2021. Parent wanted to discuss the SETT evaluation, the FBA, and the drop off and pick up process. The committee also updated the special factors page to reflect the drop off and pick up process. Specifically, that because Student gets overstimulated in large groups that Parent would drop Student off and pick Student up at an alternate location.[29] The committee discussed the FBA process, and it was determined that once Mrs. Jenson communicates with Easter Seals regarding the SETT she will communicate with Parent. The committee also discussed how committee members will communicate going forward.[30] The committee made a communication plan that if Parent had a concern she would notify the special education teacher, the special education director and any additional staff member necessary related to the concern. Staff would have two business days to respond to the email. If staff had concerns and weren't comfortable addressing it with Parent they would notify the special education director to schedule a meeting with Parent.[31]

On March 9, 2022, the committee met to review the FBA. The Board-Certified Behavior Analysis (BCBA) attended the meeting and reviewed the FBA and her recommendations to promote positive behaviors. The committee determined that a behavior plan to address the maladaptive behaviors documented on the FBA, BCBA training to support the implementation of the BIP ongoing support by the BCBA to monitor and assist with the BIP, behavior goals,

---

[28] H-23-08-Id., pg. 344.
[29] H-23-08-Id., pg. 370.
[30] H-23-08-Id.
[31] H-23-08-Id., pg. 382.

Exhibit B to Complaint

First-Then, and classroom teacher will model use of proloquo2Go app, will all be added to the IEP.[32]

Sometime in March while Student was out sick, Holly McCord, Student's one on one paraprofessional for many years was reassigned. On March 29, 2022, Parent attempted to drop Student off for school at the alternate location discussed in the IEP. Student was taking new medication and Parent wished to explain what side effects to watch for to the teacher and paraprofessionals and asked if Keith Renuard (Student's teacher) could come out and speak with her. Ronnie Simmons, the principal, comes up and tells Parent she needs to speak with the nurse. Parent responds that the teacher and paraprofessionals need to know the side effects to look for. Again Mr. Simmons stated she needed to speak with the nurse. Parent then states she will speak with the nurse after she drops Student off. Then Parent asked if he has a 1 to 1 paraprofessional and Mr. Simmons responded that Mr. Renuard has a classroom, and everything is taken care of. Parent then states that she cannot leave Student at school unless he has a one-on-one paraprofessional at which time Mr. Simmons responds, "okay well you can just take him on home then." [33] At this point Parent takes Student home. Parent attempts to set up a facilitated IEP. However, on April 8, 2022, Student is disenrolled from the Vilonia School District by Ronnie Simmons, school principal for missing 10 consecutive days of school.[34] No one contacted Parent to notify her that Student had been unenrolled.

On April 18, 2022, a facilitated IEP meeting is scheduled. The team waited forty-five minutes for Holly McCord (Student's previous paraprofessional since the fourth grade), but were

---

[32] H-23-08-Id., pg. 392.
[33] H-23-08-Recording Simmons telling me to take Student home.
[34] H-23-08-Transcripts vol. I., pg. 88.

Exhibit B to Complaint

later told that Ms. McCord had been informed that if she wanted to attend she needed to take personal time off.[35]

Parent continued to attempt to schedule a facilitated IEP meeting.  On April 21, 2022, the facilitator called mom to tell her they could not have the facilitated IEP meeting because Student had been dropped from school.[36]  The Facilitator tells mom that Student was dropped the Friday before the meeting.[37]

Student did not receive services during this time even though he had an IEP that was in place until May 26, 2022.  No IEP meeting was held, and there was no evidence presented that the District sent any notices of conference to mom.  In July 2022, Jennifer Jensen reached out to Parent to request that she return the District's equipment that had been provided to Student per his IEP.  There was an email exchange and at one point Mrs. Jensen explained that Parent would need to reenroll Student in the District.

On August 12, 2022, Parent filed her first due process hearing request.

On September 6, 2022, a meeting was held between Parent and District.  During this meeting Compass Academy was discussed.  The discussion included that Ms. Jennifer Jensen had gone to visit Compass Academy and found the program to be appropriate for Student. Also during this meeting the parties were of the belief that if Student needed a one-on-one paraprofessional that Compass Academy would provide one.[38]  The Parent was told to enroll Student in Compass Academy and the District would be paying for Student to attend.[39]

---

[35] H-23-08-Transcripts vol. IV., pg. 183.
[36] H-23-08-Recording Facilitator telling me JJ dropped Student from roll before the IEP meeting.
[37] H-23-08-Id.
[38] The evidence showed that Student had required the assistance of a one-on-one paraprofessional for his tenure at the Vilonia School District.
[39] Recording of 9-6-2022 meeting.

Exhibit B to Complaint

On October 6, 2022, Student began attending Compass Academy.[40]

There was no evidence presented that there were any meetings held with Parent after Student's enrollment in Compass Academy on October 6, 2022.

## DISCUSSION AND CONCLUSIONS OF LAW

### General Legal Principles

In general, the burden of proof is viewed as consisting of two elements: the burden of production and the burden of persuasion. Before consideration of the Parent's claims, it should be recognized that the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). Accordingly, the burden of persuasion, in this case, must rest with the Parent.

In the role of factfinders, special education hearing officers are charged with the responsibility of making credibility determinations of the witnesses who testify. *Albright ex rel. Doe v. Mountain Home Sch. Dist.* 926 F.3d 943 (8th Cir. 2019), *J. P. v. County School Board*, 516 F.3d 254, 261 (4th Cir. Va. 2008). This hearing officer found each of the witnesses who testified to be credible (except as noted below) in that they all testified to the facts to the best of their recollection; minor discrepancies in the testimony were not material to the issues to be determined and, in any event, were not deemed to be intentionally deceptive.

The weight accorded the testimony, however, is not the same as its credibility. Some evidence, including testimony, was more persuasive and reliable concerning the issues to be decided, discussed as necessary below. The documentation and testimony were sometimes

---

[40] Transcript Vol. I., Pg. 12.

Exhibit B to Complaint

conflicting, although this hearing officer does not necessarily find that any one witness was intentionally untruthful, these inconsistencies did play a role in the hearing officer's decisions. In reviewing the record, the testimony of all witnesses and each admitted exhibit's content were thoroughly considered in issuing this decision, as were the parties' post hearing briefs.

## **Applicable Legal Principles**

The IDEA requires the provision of a "free appropriate public education" (FAPE) to children who are eligible for special education services. 20 U.S.C. § 1412. FAPE consists of both special education and related services. 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17. Decades ago, in *Hendrick Hudson Central School District Board of Education v. Rowley*, 458 U.S. 176 (1982), the U.S. Supreme Court addressed these statutory requirements, holding the FAPE mandates are met by providing personalized instruction and support services that are reasonably calculated to benefit educationally from the instruction, provided that the procedures set forth in the Act are followed. The Third Circuit has interpreted the phrase "free appropriate public education" to require "significant learning" and "meaningful benefit" under the IDEA. *Ridgewood Board of Education v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).

Districts meet the obligation of providing FAPE to eligible students through development implementation of an IEP that is " 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's individual circumstance". The U.S. Supreme Court considered the application of the *Rowley* standard, and it observed that an IEP "is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F. v. Douglas County School District* RE-1, 137 S. Ct. 988, 999, 197 L.Ed.2d 335, 350 (2017). The IEP must aim to enable the child to make

Exhibit B to Complaint

progress. The essential function of an IEP is to set out a detailed individualized program for pursuing academic and functional advancement in all areas of unique need. *Endrew F.*, 137 S. Ct. 988, 999 (citing Rowley at 206-09). The *Endrew* court thus concluded that "the IDEA demands … an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 137 S. Ct. at 1001, 197 L.Ed.2d at 352.

*Endrew, Rowley,* and the IDEA make abundantly clear, the IEP must be responsive to the child's identified educational needs. See 20 U.S.C. § 1414(d); 34 C.F.R. § 300.324. However, a school district is not required to provide the "best" program, but rather one that is appropriate in light of a child's unique circumstances. *Endrew F.* In addition, an IEP must be judged "as of the time it is offered to the student, and not at some later date." *Fuhrmann v. East Hanover Board of Education,* 993 F.2d 1031, 1040 (3d Cir. 1993).

"The IEP is 'the centerpiece of the statute's education delivery system for disabled children.' " *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.* RE-1, U.S. 137 S. Ct. 988, 994, 197 L. Ed. 2d 335 (2017) (quoting *Honig v. Doe,* 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). An IEP is a comprehensive program prepared by a child's "IEP Team," which includes teachers, school officials, the local education agency (LEA) representative and the child's parents. An IEP must be drafted in compliance with a detailed set of procedures. 20 U.S.C. § 1414(d)(1)(B). An IEP must contain, among other things, "a statement of the child's present levels of academic achievement," "a statement of measurable annual goals," and "a statement of the special education and related services to be provided to the child." Id. § 1414(d)(1)(A)(i). A free appropriate public education (FAPE), as the IDEA defines it, includes individualized goals, "specially-designed instruction" and "related services." Id. § 1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child

Exhibit B to Complaint

with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction. Id. §§ 1401(26), (29). A school district must provide a child with disabilities such special education and related services "in conformity with the [child's] individualized education program," or "IEP." 20 U.S.C. § 1401(9)(D).

When formulating an IEP, a school district "must comply both procedurally and substantively with the IDEA." *Rowley*, at 206-07 A procedural violation occurs when a district fails to abide by the IDEA's safeguard requirements. A procedural violation constitutes a denial of a FAPE where it "results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dis*t., 592 F.3d 938, 953 (9th Cir. 2010). A substantive violation occurs when an IEP is not "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F.* The IDEA further provides that if a parent refuses to consent to the receipt of special education and related services, or fails to respond to a request to provide such consent, "the local educational agency shall not be considered to be in violation of the requirement to make available a free appropriate public education to the child for the failure to provide such child with the special education and related services for which the local educational agency request such consent." 20 U.S.C. 1414(a)(1)(D)(ii)(III)(aa).  Although a parent always retains the right to withhold consent, after consent is withheld, the school district cannot be held liable for denying a FAPE.  Additionally, when parents waive their children's rights to services, the school district may not override their wishes.  *Fitzgerald ex rel. S.F. v. Camdenton R-II School District*, 439 F.3d 773 (8th Cir. 2006); *Schoenfeld v. Parkway School District*, 138 F.3d 379 (8th Cir. 1998).

Pursuant to Part B of the IDEA, states are required to provide a FAPE for all children with disabilities between the ages of three and twenty-one. 20 U.S.C. § 1412(a); 34 C.F.R. §300.300(a). In 1982, in *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, the U.S. Supreme Court addressed the meaning of FAPE and set forth a two-part analysis that must be made by courts and hearing officers in determining whether a school district has failed to provide FAPE as required by federal law. 458 U.S. 176, 206-07 (1982). Pursuant to Rowley, the first inquiry that a court or hearing officer must make is that of whether the State, i.e. local educational agency or district, has complied with the procedures set forth in the IDEA. Thereafter, it must be determined whether the IEP(s) developed pursuant to IDEA procedures was reasonably calculated to enable the student to make appropriate progress in light of his specific circumstances. *Endrew F.*

Reimbursement for private education costs are appropriate only when 1) placement in the school district is inappropriate because the school district has failed to provide the child with a FAPE; and 2) the private school placement is appropriate. Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009); Florence County School Dist. Four v. Carter, 510 U.S. 7 (1993).

## **PROCEDURAL VIOLATIONS**

Regarding the first inquiry, that of whether the District complied with the procedures set forth in the IDEA, this Hearing Officer notes that counsel for the Parent alleges that District failed to develop an IEP for Student before he was enrolled in Compass Academy.

For historical purposes only, it is necessary to look at facts before Parent filed this due process complaint on July 13, 2023. On March 29, 2022, when Parent attempted to drop Student off for school at the alternate location discussed in the IEP, she asked the principal, Mr. Simmons

17

about whether Student had a one-to-one paraprofessional. Mr. Simmons responded that Mr. Renuard has a classroom and everything was taken care of.  Parent then responded that she could not leave Student at school unless he had a one-to-one paraprofessional and Mr. Simmons responded, "Okay well you can just take him on home then."[41]   The Parent then proceeded to request a facilitated IEP meeting.  On April 18, 2022 a facilitated IEP meeting was held and the parties waited for forty five minutes for Holly McCord(Student's paraprofessional since the fourth grade) to arrive, but Ms. McCord had been notified by the District that because she was no longer Student's paraprofessional and if she wanted to attend the facilitated IEP or any IEP meeting she would need to take personal time.[42] This facilitated IEP was cancelled because Ms. McCord could not attend and the Parent wanted her present as she felt she had the most knowledge about Student's needs as she had only recently been removed as Student's one on one paraprofessional. The facilitated IEP meeting was to be rescheduled when Ms. McCord could attend.  On April 21, 2022, the facilitator called mom to tell her they could not have the facilitated IEP meeting because Student had been dropped from school.[43] The Facilitator told mom that Student was dropped the Friday before the meeting.[44]

Both the superintendent and Mrs. Jenson testified that even after Student was unenrolled they had an obligation to continue to provide Student a FAPE.[45] Mrs. Jenson stated that "If we knew he was a resident here and he was here, yes. But I didn't know what had happened.  I was not informed of anything."[46]  Student lived on Main Street; the principal had hand delivered an IEP to mom at that address; and the District had no evidence that Student had moved out of the

---

[41] H-23-08-Recording Simmons telling me to take Student home.

[42] H-23-08-Transcript, Vol. IV., pg. 183.

[43] H-23-08-Recording Facilitator telling me JJ dropped Student from roll before the IEP meeting.

[44] H-23-08-Id.

[45] H-23-08-Transcript, Vol. IV., pg. 190-191.

[46] H-23-08-Id.

Exhibit B to Complaint

District.  To the contrary, Parent was scheduling facilitated IEP meetings to address her concerns about the paraprofessional.

Ark. Special education regulations 6.05.5 Evaluations before change in eligibility states:

6.05.5.1 Except as provided in paragraph 6.05.5.2 of this section, a public agency must evaluate a child with a disability in accordance with 34 CFR 300.304 through 300.311 before determining that the child is no longer a child with a disability.

Here the District dismissed the student from special education when they summarily unenrolled him from the District knowing that Parent was attempting to schedule a facilitated IEP meeting, that Parent had a disagreement over the paraprofessional, and that student was not required to follow the District attendance policy per his IEP.

Further, once Student was unenrolled from the District it was not relieved of its obligation to provide Student a FAPE.  The IDEA expressly requires states to make a FAPE "available to all children with disabilities residing in the State between the ages of 3 and 21...." 20 U.S.C. § 1412(a)(1)(A)(emphasis added); see also 34 C.F.R. § 300.101 ("A free appropriate public education must be available to all children residing in the State between the ages of 3 and 21 ....") (emphasis added). Neither this subsection nor the limiting provision immediately following it restricts the state's obligation to only publicly enrolled children. See 20 U.S.C. § 1412(a)(1)(B) (exempting states from FAPE obligations in certain circumstances based on child's age).  A second statutory provision in the Act requires each LEA to have in effect an IEP at the beginning of each school year for each disabled child "in the agency's jurisdiction." 20 U.S.C. § 1414(d)(2)(A) (emphasis added); see also 34 C.F.R. § 300.323(a).

Exhibit B to Complaint

In this case the evidence shows that the District was aware that Student was still in the District and the District by the testimony of Mr. Simmons, Mr. Adams, and Mrs. Jensen understood it had a continued obligation to Student but failed to act on that obligation. No services were offered to Student after the District unenrolled him and further, no IEP was developed for the 2022-2023 school year.

Further the evidence shows that Parent continued to attempt to have an IEP meeting. The District refused, and continued to tell Parent that Student was no longer enrolled in the District. It wasn't until after Parent filed her first Due Process hearing request on August 12, 2022, that the District held a meeting, and that meeting was not to develop an IEP.   At the meeting held on September 6, 2022, everyone agreed that Compass was an appropriate placement for Student. Parent did not unilaterally enroll Student in Compass Academy.  At the September 6, 2022, meeting, Parent was directed to enroll Student in Compass Academy. Parent followed those instructions and Student began attending Compass Academy on October 6, 2022.  At some point, although not entirely clear when, after Student was enrolled, it was determined that Student would need a one-on-one paraprofessional and that Compass Academy would pass that cost on to the Parent.  Ms. Jensen testified in H-23-08, that she was made aware, after Student was enrolled in Compass Academy that Student would need a one-on-one paraprofessional to attend. There is nothing in the record that after Student was enrolled in Compass Academy on October 6, 2022, until the filing of this Due Process Hearing on July 13, 2023, that the District sent Parent a notice of conference, attempted to hold an IEP meeting or develop an IEP for Student. District in its post hearing brief argues that Student wasn't enrolled in the District.  This hearing officer found in H-23-08 that this argument was disingenuous and again here it is without merit.  The District agreed to Student being placed at Compass Academy; agreed that it was an appropriate

20

Exhibit B to Complaint

placement and in doing that agreed that the District either couldn't or wouldn't provide Student a FAPE. Additionally, the District never attempted to develop an IEP for Student for the 2022-2023 school year either before or after his enrollment in Compass Academy on October 6, 2023. This is a procedural violation of IDEA.

**CONCLUSION**

Having considered Parent's allegation of a procedural due process violation, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that District procedurally violated the IDEA by (1) failing to develop an IEP either before or after student was enrolled in Compass Academy for the 2022-2023 school year.

**SUBSTANTIVE VIOLATIONS OF IDEA**

Having analyzed the first prong of the FAPE analysis, specifically that of procedural violations, and having found that the District procedurally violated IDEA by failing to develop an IEP for the 2022-2023 school year, either before or after student was enrolled in Compass Academy, it is now necessary to consider whether this procedural violation resulted in a substantive denial of FAPE to Student. Even if a school district violated IDEA procedures, it does not automatically follow that the school district has denied the child a FAPE. K.E. v. Indep. Sch. Dist. 15, 647 F.3d 795, 804 (8th Cir. 2011). Rather, a school district's educational plan for a given student will only be set aside for IDEA procedural violations "if the procedural inadequacies compromised the pupils right to an appropriate education, seriously hampered the parent's opportunity to participate in the formulation process or caused a deprivation of educational benefit." Id. At 804-805. Here, there is no IEP for Student to receive benefit from, there is no evidence that Student was provided any services by the District from August 13,

21

2022, through July 13, 2023.  This prevented Student from receiving any educational benefit and also seriously hampered Parent's opportunity to participate.  Student could not receive educational benefit, nor could Parent have any opportunity to participate, when the district failed/refused to develop an IEP for Student for the 2022-2023 school year.  Further, District doesn't get to tell Parent to go enroll Student in Compass Academy and they will pay for it, change their minds and then do nothing.  If the District disagreed with the placement at Compass Academy after student enrolled, at a minimum it should have held an IEP meeting to develop an appropriate plan and allow mom to participate in programming.  Instead, the District let Student continue to attend Compass Academy, and failed to convene or hold an IEP meeting to address Student's programming and services.

Having considered Parent's argument that the District's failure to develop an IEP for Student for the 2022-2023 school year was a denial of FAPE, and in light of the findings and conclusions supra, it is the conclusion of this Hearing Officer that the District's failure to develop an IEP for Student for the 2022-2023 school year denied Student FAPE and substantively violated the requirements of IDEA.

### Private School Placement

As discussed above the District failed to provide Student a FAPE during the 2022-2023 school year.  This is not a case where the Parent unilaterally placed Student at a Private School.  The District was a willing participant in the decision that Compass Academy was an appropriate placement and that Student should attend Compass Academy beginning October 6, 2022.

In addition to a denial of FAPE, a claim for private school tuition must include proof that the school district cannot prospectively provide a FAPE.  In Indp. Sch. Dist. No. 283 v. E.M.D.H. by & Through L.H., 357 F. Supp. 3d876, 891 (D. Minn. 2019), the district court

Exhibit B to Complaint

reversed an award of private school tuition as compensatory education finding, "there is scant evidence concerning whether the District can provide a FAPE prospectively." See Brantley, 936 F. Supp. at 655 (" In order to receive such relieve, Plaintiffs must demonstrate that FAPE is not possible in public schools…It is further noted that the possibility of FAPE in the District must be more than theoretical. Excessive delay in Byron's placement or repeated improper placements may demonstrate that FAPE is not possible and that a private school placement may be appropriate.").

Finally, a claim for private school tuition must include proof that the private school "is an 'appropriate' placement within the meaning of the IDEA." Sneitzer v. Iowa Dept. of Educ., 796 F.3d 942, 948 (8th Cir. 2015) In order to get reimbursement for a private placement, two requirements must be established: that the school failed to provide a FAPE; and that the private school is an "appropriate" placement within the meaning of the IDEA. Forest Grove Sch. Dist. v. T.A.,557 U.S. 230, 242–43 n. 9, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009) ; Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.,471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). An appropriate placement is one that will "provide the Student a FAPE consistent with the IEP." Id. A private placement need not satisfy a least restrictive environment requirements to be appropriate. C.B. ex re. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn, 636 F.3d 981, 991 (8th Cir. 2001).

Reimbursement is an equitable form of relief. This may include not just the tuition, but other fees (such as application fees, assessment fees), the costs of related services (if not covered by tuition), supplies, transportation, etc. Sch. Committee of Town of Burlington, Mass. v. Dept. of Educ. Of Mass., 471 U.S. 359 (1985) (establishing the parental right to reimbursement for a private school placement as an equitable remedy under the IDEA) and stating:

23

Exhibit B to Complaint

"Reimbursement merely requires [the school district] to belatedly pay expenses it should have paid all along and would have borne in the first instance had it developed a proper IEP. Such a post hoc determination of financial responsibility was contemplated by the legislative history." Sch. Committee of Town of Burlington, Mass, 471 U.S. at 370-371.

The Supreme Court in Burlington cautioned that parents who make a unilateral private placement decision assume the financial risk of not being reimbursed:

"… [P]arents who unilaterally change their child's placement during the pendency [of a due process hearing] do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the [District] was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated the IDEA. Burlington, 471 U.S. at 373-374. However, in this case Parent did not unilaterally move Student to a private school. Parent and District agreed that Compass Academy was an appropriate placement for Student.

Applying the law to the facts in this case, Parent has presented sufficient evidence that the District is unwilling and therefore unable to prospectively provide Student a FAPE. Based on the evidence presented in this case, the District's unwillingness to even meet its basic obligations, of holding an IEP meeting and developing an appropriate program for Student for the 2022-2023 school year under IDEA, proves that the District is incapable or unwilling to prospectively provide Student a FAPE. District argues in its post hearing brief that this case specifically the private school placement is barred by collateral estoppel and res judicata. This hearing officer disagrees. Res judicata simply means an issue that has been adjudicated by a competent court and may not be pursued further by the same parties. But *res judicata* applies only where a party seeks to relitigate claims and issues that have previously been

Exhibit B to Complaint

adjudicated. *See Johnson v. Vilsack*, 833 F.3d 948, 953 (8th Cir. 2016). Here, the claims raised by Parent in her August 12, 2022, due process complaint dealt with a perceived failure of special education in Student's eighth and ninth grade years, unlike those in this case which addresses perceived failure of special education in Student's tenth grade year.   These claims are patently different, and thus *res judicata* has no bearing here.    Similarly, District's argument that collateral estoppel should prevent Parent from being able to raise these claims is misplaced.

The Director of Compass Academy Courtney Williams testified that Compass academy is a private nonprofit school choice option for kids K-12.  Ms. Willams stated that they are primarily designed for kids with special needs, but they have through the years added those that are neurotypical as well.  Additionally, she testified that their classes are all age and ability groups, and they have eight to ten kids per class.  Further, each classroom has a teacher and a paraprofessional.[47]  According to Ms. Williams Student was placed in a classroom called freshman academy.  This class has a combination of seventh to ninth grade students with various needs.  Student receives his academic instruction in this classroom.  Student also receives sixty minutes of physical therapy and sixty minutes of speech therapy weekly.[48] Ms. Williams testified that Student made progress in being able to participate in the classroom setting, in using his communication device, in handwriting, learning to cook, independence and making friends.[49] Additionally, both the District and the Parent in that 9/6/2022 meeting agreed that Compass academy was an appropriate placement for Student.  This hearing officer finds based on the evidence that Compass Academy is an appropriate placement for Student.

---

[47] H-23-08-Transcript Vol. II, pg. 7.
[48] H-23-08-Id., pg. 10.
[49] H-23-08-Id., pgs. 19-21.

Exhibit B to Complaint

**Conclusion**

The results of the testimony and evidence warrant a finding for the Parent.  Specifically, Parent introduced sufficient evidence in the record to establish by preponderance of the evidence that District denied Student a FAPE between August 13, 2022-July 13, 2023.  District is hereby ordered to take the following actions regarding Student:

1.      District is ordered to pay tuition and all costs for Compass Academy, including the cost of the one-on-one paraprofessional for the 2022-2023 school year, minus any amount the Parent or Compass Academy received in scholarship or other funding.

2.      District is ordered to pay tuition and all costs for Compass Academy, including the cost of the one-on-one paraprofessional for the 2023-2024 school year, minus any amount the Parent or Compass Academy receives in scholarship or other funding.

3.      District is ordered to reimburse Parent for mileage to take student to and from Compass Academy for the 2022-2023 school year and the 2023-2024 school year.  Mileage shall be reimbursed at the State mileage reimbursement rate. Parent shall within 15 days of this decision provide the District with documentation of mileage to take student to and from Compass Academy during the 2022-2023 school year and shall provide documentation of mileage every month until the end of the 2023-2024 school year.


If Parent also alleges that the District's conduct constitutes disability discrimination in Violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. §12131-12165. This Hearing Officer has no jurisdiction over disability discrimination claims. See ADE Spec. Ed. Rules §10.01.22.1.

Exhibit B to Complaint

Accordingly, to the extent Parent's due process complaint raises disability discrimination claims, those claims are dismissed.

### Finality of Order and Right to Appeal:

The decision of this Hearing Officer is final.  A party aggrieved by this decision has the right to file a civil action in either Federal District Court or a State Court of competent jurisdiction, pursuant to the Individuals with Disabilities Education Act, within ninety (90) days after the date on which the Hearing Officer's Decision is filed with the Arkansas Department of Education.

Pursuant to Section 10.01.36.5, Special Education and Related Services:  Procedural Requirements and Program Standards, Arkansas Department of Education 2008, the Hearing Officer has no further jurisdiction over the parties to the hearing.

**IT IS SO ORDERED.**

*Dana McClain*

**HEARING OFFICER**

10/5/2023

**DATE**

Exhibit B to Complaint