**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**T.R.**                                                                                                   **PLAINTIFF**

**v.**                                        **Case No. 4:23-cv-01194-LPR**

**VILONIA SCHOOL DISTRICT**                                                       **DEFENDANT**
                                                  **ORDER**

This is the attorneys' fees and costs portion of a case brought under the Individuals with Disabilities Education Act (IDEA).[1]   Plaintiff—the parent of a disabled child—brings her prevailing party status to this Court seeking attorneys' fees and costs.[2]   She requests $81,005.41 ($79,512.50 in attorneys' fees and $1,492.91 in costs) to recover the expense of litigating two Arkansas Department of Education due process hearings and the present federal case.[3]   For the reasons stated below, Plaintiff's Motion for Attorneys' Fees and Costs is GRANTED IN PART and DENIED IN PART.[4]   Accordingly, the Court awards Plaintiff $40,046.00 in attorneys' fees and $1,492.91 in costs, for a total of $41,538.91.

## I.  BACKGROUND

Plaintiff's claim for attorneys' fees arises out of two due process complaints filed with the Arkansas Department of Education against the Vilonia School District.[5]   Those two complaints alleged that the District had denied Plaintiff's child a Free Appropriate Public Education (FAPE)

---

[1] *See* Compl. (Doc. 1); 20 U.S.C. §§ 1400–1487.

[2] *See* Compl. (Doc. 1).

[3] Pl.'s Br. in Supp. of Pl.'s Mot. for Att'y Fees and Costs (Doc. 27) at 1–2.

[4] Doc. 26.

[5] *See* Compl. (Doc. 1) ¶¶ 2, 10, 15.

in violation of the IDEA.[6]  And those two due process complaints led to two administrative due process hearings.[7]

The decisions following those hearings determined that (1) the District denied Plaintiff's child a FAPE in the 2021–2022 and 2022–2023 school years; (2) the District would not be able to provide a FAPE for the 2022–2023 and 2023–2024 school years; and (3) Compass Academy was an appropriate private school placement for those years.[8]  The District challenged those decisions in this Court.[9]  On March 31, 2025, the Court upheld almost all the relief granted by the administrative decisions.[10]  After receiving that favorable result, Plaintiff filed the instant Motion before the Court seeking $79,512.50 in attorneys' fees and $ 1,492.91 in costs, for a total of $81,005.41.[11]

## II. ANALYSIS

### a. Attorneys' Fees

The IDEA permits district courts to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability . . . ."[12]  When calculating

---

[6] *See id.* ¶¶ 10, 15.

[7] *See id.* ¶¶ 10–12, 15–17.  The first hearing lasted six days and had ten witnesses.  *Id.* ¶¶ 10–12.  The second hearing lasted two days with four testifying witnesses.  *Id.* ¶¶ 15–17.

[8] *See* March 31, 2025 Order (Doc. 25) at 1–2.

[9] *See* Answer (Doc. 6) ¶¶ 29–38.

[10] *See* March 31, 2025 Order (Doc. 25) at 45–46.  The only part of the administrative decisions that the Court reversed was the portion awarding Plaintiff transportation costs for the 2022–2023 and 2023–2024 school years.  *Id.*  Because the March 31, 2025 Order thoroughly details the facts of this case, the instant Order only recites the background relevant to the attorneys' fees and costs portion of the case.

[11] *See* Pl.'s Mot. for Att'y Fees and Costs (Doc. 26) at 1–2.  After the Court's March 31, 2025 Order, there has been more litigation in this case related to the scope of relief granted to the Plaintiff.  *See* Docs. 32–39.  Though the Court has recently resolved that issue, Plaintiff has not sought any attorneys' fees or costs for that portion of the litigation.  *See* March 5, 2026 Order (Doc. 39).  Thus, that portion is not relevant to the instant Order, and the Court does not discuss it.

[12] 20 U.S.C. § 1415(i)(3)(B)(i)(I).

2

these fees, courts typically use the lodestar method.[13]    That method requires "multiplying the number of hours reasonably expended by the reasonable hourly rates."[14]  A court carrying out this calculation "should exclude hours that were not reasonably expended . . . ."[15]  And, in determining the hourly rates, a court uses "the ordinary rate for similar work in the community where the case has been litigated."[16]

Consistent with the foregoing legal framework, the Court must now determine the prevailing rates for attorneys and paralegals in Arkansas for IDEA cases.[17]  Plaintiff contends that the following rates are reasonable in Arkansas: $350 per hour for lead attorney Theresa Caldwell, $250 per hour for co-counsel Clay Fendley, and $100 per hour for paralegal Darlene Hogancamp.[18] The Court rejects all but the proposed paralegal rate.[19]  The reasonable rate for IDEA cases in the Eastern District of Arkansas is $250 per hour for lead counsel, $200 per hour for co-counsel, and $100 for a paralegal.[20]

---

[13] *See Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) ("Where attorney fees are appropriate, courts typically use the 'lodestar' method for calculating a reasonable award.").

[14] *Id.* (internal quotation marks omitted) (quoting *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017)).

[15] *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (internal quotation marks omitted) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)).

[16] *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).

[17] The Court does not discuss Plaintiff's prevailing party status because the District has not challenged that status.

[18] *See* Pl.'s Br. in Supp. of Pl.'s Mot. for Att'y Fees and Costs (Doc. 27) at 1–2, 14–17.

[19] The District does not dispute that $100 per hour is a reasonable rate for a paralegal in Arkansas.  The Court finds that rate to be reasonable.

[20] *See C.W. v. Greenbrier Sch. Dist.*, No. 4:21-cv-00987-BRW, at *4 (E.D. Ark. Feb. 23, 2023) (awarding Ms. Caldwell $250 per hour and Mr. Fendley $200 per hour); *Jacksonville N. Pulaski Sch. Dist. v. D.M.*, No. 4:20-cv-00256-BRW, 2021 U.S. Dist. LEXIS 256673, at *5 (same); *Johnson v. Sims*, No. 2:20-cv-139-DPM, 2020 WL 6585693, at *1 (E.D. Ark. Nov. 10, 2020) (awarding another lead attorney $250 per hour and co-counsel $200 per hour); *B.H. v. Vilonia Sch. Dist.*, No. 4:18-cv-855-DPM, 2020 U.S. Dist. LEXIS 102570, at *1 (E.D. Ark. June 9, 2020) (awarding Ms. Caldwell $250 per hour and Mr. Fendley $180 per hour); *McMinn v. Sloan-Hendrix Sch. Dist.*, No. 3:16-cv-23-DPM, 2018 U.S. Dist. LEXIS 39882, at *3 (E.D. Ark. Mar. 12, 2018) (same); *Surles v. Pocahontas Sch. Dist.*, No. 3:16-cv-183-DPM, 2017 U.S. Dist. LEXIS 155027, at *4 (E.D. Ark. Sep. 22, 2017) (same).  *See also Paris Sch. Dist*, 894 F.3d at 888–89 (affirming rates of $250 per hour for Ms. Caldwell and $200 per hour for Mr. Fendley in the Western District of Arkansas); *S.A. v. Magnet Cove Sch. Dist.*, No. 6:24-cv-6146, at *4 (W.D. Ark. June 3, 2025) (providing the same rates to Ms. Caldwell and Mr. Fendley and listing cases in support of those rates).

With those reasonable rates set, the Court must now evaluate Plaintiff's claimed hours.  In total, Plaintiff claims lead attorney Theresa Caldwell reasonably expended 177.10 hours, co-counsel Clay Fendley reasonably expended 63.68 hours, and paralegal Darlene Hogancamp reasonably expended 16.075 hours.[21]  The Court first must excise 5.64 hours from Ms. Caldwell's claimed time for attending and preparing for two resolution meetings conducted under 20 U.S.C. § 1415(f)(1)(B)(i).[22]  Those hours are not compensable under the IDEA.[23]  Accordingly,

---

Plaintiff urges the Court to overlook these cases and adopt a higher rate for Ms. Caldwell and Mr. Fendley.  *See* Pl.'s Br. in Supp. of Pl.'s Mot. for Att'y Fees and Costs (Doc. 27) at 13–17.  The Court is unpersuaded.  Plaintiff proposes two main arguments.  First, Plaintiff directs the Court to cases where Ms. Caldwell was given a rate of $350 per hour and Mr. Fendley was given a rate of $250 per hour and other cases where other similarly situated attorneys were given comparable rates.  *See id.* at 15–17 (citing *A.W. v. Pulaski Cnty. Special Sch. Dist.*, No. 4:22-cv-00168-JM, 2023 WL 5959496, at *2 (E.D. Ark. Sep. 13, 2023) (awarding Ms. Caldwell $350 per hour and Mr. Fendley $250 per hour)); *id.* (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, No. 4:82-cv-866-DPM, 2019 WL 3408892, at *2 (E.D. Ark. July 26, 2019) (awarding $350.00 per hour to lead counsel and $300 to co-counsel for monitoring compliance with desegregation consent decree)); *id.* at 10 (citing *Knox Cnty. v. M.Q.*, No. 3:20-cv-00173-DCLC-JEM, 2022 WL 946285, at *3 (E.D. Tenn. Mar. 29, 2022), aff'd, 62 F.4th 978 (6th Cir. 2023) (awarding IDEA counsel $425 per hour)).  But the cases awarding Ms. Caldwell and Mr. Fendley a higher rate are outliers.  The vast majority of cases in this district award the rates the Court applies today.  And the cases involving other attorneys are similarly problematic, either because they are not IDEA cases or because they represent rates for IDEA cases in jurisdictions outside of Arkansas.  Recall that, in determining the hourly rates, a court uses "the ordinary rate for similar work in the community where the case has been litigated."  *See supra* p. 3.  Thus, the Court affords little to no weight to cases that were litigated in other states or under other civil rights statutes.  Second, Plaintiff points the Court to Ms. Caldwell and Mr. Fendley's unique experience litigating IDEA cases, their past success, and the challenges inherent in litigating these cases.  *See generally* Pl.'s Br. in Supp. of Pl.'s Mot. for Att'y Fees and Costs (Doc. 27).  The Court has thoroughly considered these arguments and the evidence accompanying them.  But these arguments are indistinguishable from the arguments raised on Ms. Caldwell and Mr. Fendley's behalf in many of the cases (some cited above) where courts approved the same rates the Court approves today.  The bottom line is that none of Plaintiff's arguments move the needle any more today than they did in past cases.

[21] Pl.'s Br. in Supp. of Pl.'s Mot. for Att'y Fees and Costs (Doc. 27) at 1–2.

[22] The Court is referring to the following hours that Ms. Caldwell billed for resolution meetings and related work: 2.75 hours on August 23, 2022; 1.33 hours on the same day; 0.17 hours on July 18, 2023; another 0.27 hours that day; one more entry for 0.12 hours that day; and 1.00 hours on July 19, 2023.  *See* Ex. A-1 (Att'y Billed Hours) to Pl.'s Mot. for Att'y Fees and Costs (Doc. 26-1) at 15, 18–19.

[23] The IDEA does not permit attorneys' fees "relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ."  20 U.S.C. § 1415(i)(3)(D)(ii).  And, because a resolution meeting described in "subsection (f)(1)(B)(i) [is] not . . . considered . . . a meeting convened as a result of an administrative hearing or judicial action[,]" a resolution meeting is not compensable.  *See* 20 U.S.C. § 1415(i)(3)(D)(ii)–(iii); *id.* § 1415(f)(1)(B).  *See also Jacksonville N. Pulaski Sch. Dist.*, 2021 U.S. Dist. LEXIS 256673, at *5–6 (explaining that hours Ms. Caldwell billed relating to a pre-hearing resolution session are not compensable); *Vilonia Sch. Dist. v. M.S.*, 4:18-cv-00219-KGB (E.D. Ark. June 8, 2020) (same).  The Court notes that there is an inconsistency in language between Section 1415(i)(3)(D)(ii)—which uses the phrase "convened as a result of an administrative *proceeding*"—and Section 1415(i)(3)(D)(iii) which says "convened as a result of an administrative *hearing* . . . ."  Although differences in words in the same statute normally connote a difference in meaning, the context and structure of these Sections show there is not a difference in meaning between "administrative proceeding" and "administrative hearing."  *Compare Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given

Ms. Caldwell's hours are reduced from 177.10 hours to 171.46 hours. After that small reduction, the Court applies an across-the-board 30% reduction to Plaintiff's claimed hours. This is for several reasons.

First, the Court finds that the issues in the underlying administrative hearings could have been litigated in much less time. The Court agrees with the District that this case was not unusually complex or extensive compared to other IDEA cases.[24] Despite that, the first hearing lasted six days even though there were only ten witnesses.[25] The second hearing could have been avoided altogether.[26] Indeed, the hearing officer's decision in the first hearing made plain that the issue of private placement—the central issue of the second hearing—could have been decided in the first hearing if Plaintiff had either amended her first due process complaint or filed a new complaint including that issue.[27] Bolstering the conclusion that the second hearing could have been avoided,

---

statute, the same term usually has the same meaning and different terms usually have different meanings." (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170–71 (2012))), *with Bondi v. VanDerStok*, 604 U.S. 458, 505 (2025) (Thomas, J., dissenting) (noting that "the presumption of consistent usage is 'particularly defeasible by context . . . .'" (quoting Scalia & Garner, *supra*, at 171)). In the instant case, the inconsistent statutory wording is akin to a scrivener's error. *Cf.* Scalia & Garner, *supra*, at 170 ("[M]ore than most other canons, [the presumption of consistent usage canon] . . . assumes a perfection of drafting that, as an empirical matter, is not often achieved. Though one might wish it were otherwise, drafters more than rarely use the same word to denote different concepts, and often (out of a misplaced pursuit of stylistic elegance) use different words to denote the same concept.").

The Court also acknowledges that the District did not ask the Court to specifically remove these hours in its briefing. But the Court reads the statute to provide the Court with an independent obligation to excise these hours. *See* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees *may not be* awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ." (emphasis added)). Because the parties were not provided an opportunity to brief this issue, Plaintiff is welcome to file a Motion for Reconsideration if Plaintiff disagrees with the Court's interpretation of the IDEA related to hours expended on the two resolution meetings. Such Motion is due within 10 days of the date of today's Order.

[24] *See* Def.'s Br. in Supp. of Def.'s Resp. to Pl.'s Mot. for Att'y Fees and Costs (Doc. 29) at 4–5, 8.

[25] *See* Compl. (Doc. 1) ¶¶ 10–12; Ex. A (First Administrative Order) to Compl. (Doc. 1) at 9.

[26] *See* Compl. (Doc. 1) ¶¶ 10–12, 15–17; Ex. A (First Administrative Order) to Compl. (Doc. 1) at 43.

[27] *See* Ex. A (First Administrative Order) to Compl. (Doc. 1) at 35 ("Parent's entire argument regarding the District's agreement to place at and pay for Student to attend Compass Academy is outside the scope of this hearing and therefore this hearing officer will not make a ruling on this issue at this time. If Parent wanted that issue decided she should have amended her due process complaint or filed a new due process complaint."); Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 42 (explaining the issues in the second administrative hearing).

much of the evidence in the second hearing overlapped with evidence in the first hearing, and all four of the witnesses who testified at the second hearing were witnesses in the first hearing.[28]  The excessive time spent on eight total days of hearings (and accompanying billed hours) warrants a reduction.

Second, the Court finds that, although Plaintiff was ultimately successful, Plaintiff's success was somewhat limited.[29]  In the first hearing, the hearing officer found that the District provided a FAPE for one of the three school years.[30]  And, although Plaintiff sought tuition payments and costs until the District developed an Individualized Education Program (IEP)—relief that would likely have extended beyond the 2023–2024 school year—that relief was not granted.[31]  The somewhat limited nature of Plaintiff's success justifies a reduction (when considered along with the other factors listed).[32]  Third, based on the Court's knowledge, expertise, and experience concerning the time required to complete various legal tasks, several tasks could have been done

---

[28] *See* Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 43 (noting that the record from the first administrative hearing was incorporated into the second administrative hearing and listing four witnesses who participated in the first administrative hearing); Ex. A (First Administrative Order) to Compl. (Doc. 1) at 9 (listing the same four witnesses); March 31, 2025 Order (Doc. 25) at 30–35 (explaining the differences and significant overlap between the two hearings).

[29] *See* March 31, 2025 Order (Doc. 25) at 25 (explaining that "[t]he decision [in the first due process hearing] "was a split one"); Def.'s Br. in Supp. of Def.'s Resp. to Pl.'s Mot. for Att'y Fees and Costs (Doc. 29) at 5–6 (explaining Plaintiff's claims and requests that were successful and those that were unsuccessful).

[30] *See* March 31, 2025 Order (Doc. 25) at 25; Ex. A (First Administrative Order) to Compl. (Doc. 1) at 29–30.

[31] *Compare* March 31, 2025 Order (Doc. 25) at 29–30 (explaining the relief sought), *with id.* at 34–35 (explaining the relief granted, which the Court ultimately upheld but did not expand beyond the 2023–2024 school year).  Plaintiff also did not succeed on the issue of transportation costs on appeal in this Court, but because Plaintiff nonetheless received payment for those transportation costs and was not required to reimburse the District, the Court does not consider this in its limited-success analysis.  *See id.* at 45–46, 40 n.286.

[32] The Court believes that the unsuccessful requests and claims are distinct enough from the successful requests and claims such that Plaintiff should not be compensated for the unsuccessful requests and claims.  *Cf. Emery*, 272 F.3d at 1046 (8th Cir. 2001) ("When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))).  But, even if the unsuccessful claims are related enough to the successful claims and requests that they could not be truly distinguished as unsuccessful, the Court would still have reduced the hours by the same percentage based on the other factors articulated in this Order.

in less time.[33]  Finally, the Court has noticed a fair amount of block billing that makes it difficult to evaluate how long it actually took Plaintiff's attorneys to complete each billed legal task.[34]

Applying that 30% reduction, the Court is left with the following hours: lead attorney Theresa Caldwell's 171.46 hours[35] are reduced to 120.022 hours, co-counsel Clay Fendley's 63.68 hours are reduced to 44.576 hours, and paralegal Darlene Hogancamp's 16.075 hours are reduced to 11.253 hours.

---

[33] The Court found several instances of problematic billing.  Here, the Court provides only a few examples for illustrative purposes.  First, on January 11, 2023, Ms. Caldwell billed 7.28 hours to draft a settlement agreement.  *See* Ex. A-1 (Att'y Billed Hours) to Pl.'s Mot. for Att'y Fees and Costs (Doc. 26-1) at 15.  The Court cannot fathom that drafting a settlement agreement in a case like this takes that long.  Second, on August 15, 2023, Ms. Caldwell billed 17.66 hours preparing for the second due process hearing.  *Id.* at 20.  Putting aside whether 17.66 hours of preparation time is reasonable, the Court does not believe that Ms. Caldwell worked almost 18 hours (of billable time) in a single day.  Third, on April 9, 2023, Ms. Caldwell billed 5.22 hours to "[r]eceive additional Parent Records; review; prepare Parent PreTrial Disclosure Sheet and Disclosures; [and] send [it] to [the] District. *Id.* at 15.  That disclosure sheet for the first hearing is six pages and contains only three pages of substantive information.  *See* Administrative R. (Doc. 14) at 50–55.  The other pages merely contain standardized language, signature blocks, etc.  *Id.*  Similarly, on August 9, 2023, Ms. Caldwell billed 6.18 hours to prepare, review, finalize, and send the four-page disclosure sheet for the second hearing.  *See* Ex. A-1 (Att'y Billed Hours) to Pl.'s Mot. for Att'y Fees and Costs (Doc. 26-1) at 19; Administrative R. (Doc. 14) at 2505–08.  That disclosure also only contained three pages of substantive information. *See* Administrative R. (Doc. 14) at 2505–08.

One more example is worth noting.  On June 8, 2023, and June 9, 2023, Mr. Fendley billed 4.15 hours collectively to prepare the post-hearing due process brief for the first due process hearing. Ex. A-1 (Att'y Billed Hours) to Pl.'s Mot. for Att'y Fees and Costs (Doc. 26-1) at 17–18.  Considered by itself, that is reasonable.  But, on June 12, 2023, Ms. Caldwell billed more than double that time, 9.93 hours, to review the transcripts and revise and finalize that post-hearing brief.  *See id.* at 18.  It can't be that Ms. Caldwell takes more than double the time to review, revise, and finalize a brief that it took Mr. Fendley to prepare, research, and draft the brief.  According to Mr. Fendley, he "draft[s] the post-hearing brief for [Ms.] Caldwell to review, revise, and file."  Ex. B (Decl. of Clay Fendley) to Pl's. Mot. for Att'y Fees and Costs (Doc. 26-2) ¶ 3.  Mr. Fendley tells the Court that "[t]his allocation of labor is an efficient system that minimizes the amount of duplicative attorney time spent on cases."  *Id.*  That system is not efficient (or reasonable) here.

[34] In their briefing, Defendants point the Court to several instances of this disfavored billing practice.  Def.'s Br. in Supp. of Def.'s Resp. to Pl.'s Mot. for Att'y Fees and Costs (Doc. 29) at 6 (pointing, for example, to "approximately 55 hours billed that include time spent for reviewing records, documents, or exhibits for the due process proceedings[]").  For illustrative purposes, the Court notes two specific examples.  On May 2, 2023, Ms. Caldwell billed 6.10 hours for an entry described as the following: "Review Exhibits and finalize District witnesses to be called; email attorney list of witnesses; PreHearing Conference."  And, on August 15, Ms. Caldwell billed 13.10 hours for an entry described as "Review and select documents; select Exhibits for Due Process Hearing; prepare Exhibit Binders, prepare for Due Process Hearing – Day 1."  Entries like these make it difficult for the Court to assess whether the time spent on each task is reasonable or excessive.  *Jacksonville N. Pulaski Sch. Dist.*, 2021 U.S. Dist. LEXIS 256673, at *7 ("[Block billing] makes it more difficult to assess the reasonableness of time spent on certain tasks.").  Accordingly, a reduction for this practice is appropriate.  *See Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 651 (8th Cir. 2022) ("[A] reduction in attorney's fees may be appropriate when recordkeeping is poor or block billing is submitted . . . ." (citing *Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 736 (8th Cir. 2019))).

[35] *See supra* pp. 4–5.

Multiplying the reasonable rates set above by the reduced hours, the Court makes the following calculations:

Ms. Caldwell – 120.022 hours x $250 = $30,005.50

Mr. Fendley – 44.576 hours x $200 = $8,915.20

Ms. Hogancamp – 11.253 hours x $100 = $1,125.30

Added up, the lodestar is $40,046.00. The Court is aware, however, that the lodestar is just a starting point that "may be adjusted 'upward or downward on the basis of the results obtained.'"[36] Additionally, in IDEA cases, district courts are specifically instructed to reduce attorneys' fees if (1) "the parent, or the parent's attorney . . . unreasonably protracted the final resolution of the controversy;" (2) "the amount of the attorneys' fees . . . unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;" or (3) "the time spent and legal services furnished were excessive considering the nature of the action or proceeding . . . ."[37] In this case, the Court believes the lodestar as calculated needs no adjustment, especially in light of the reduction of hours set out above. To the extent either party argues otherwise, their arguments are rejected. Accordingly, the Court awards Plaintiff $40,046.00 in attorneys' fees.

---

[36] *Dean v. Bradford Ests., LLC*, No. 4:19-CV-00748-BSM, 2020 WL 8642227, at *1 (E.D. Ark. Nov. 24, 2020) (quoting *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003)). The district court may also consider the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Vines*, 9 F.4th at 855. Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717–19).

[37] 20 U.S.C. §§ 1415(i)(3)(F)(i)–(iii).

*b.  Costs*

As for costs, Plaintiff requests $1,492.91 in costs for printing, binders, travel, and a federal filing fee.[38]  The District does not specifically challenge these costs, and the Court finds them to be reasonable.  Accordingly, the Court grants Plaintiff the full $1,492.91 in requested costs.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 26).  The Court awards $40,046.00 in attorneys' fees and $1,492.91 in costs, for a total of $41,538.91.  But the Court will withhold the Final Judgment for (at least) 14 days to allow Plaintiff time to file a Motion for Reconsideration if Plaintiff disagrees with the Court's analysis in footnote 23.  That Motion for Reconsideration must be filed within 10 days of the date of today's Order.  If Plaintiff files a Motion for Reconsideration, the District may file a Response within 10 days after the date on which Plaintiff files her Motion for Reconsideration.

IT IS SO ORDERED this 30th day of March 2026.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[38] *See* Ex. A-2 (Table of Expenses) to Pl.'s Mot. for Att'y Fees and Costs (Doc. 26-1) at 24.